ELIZABETH A. FALCONE (OSB No. 111694)
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone:    503-552-2140
Facsimile:    503-224-4518

JARED L. PALMER (CA SBN 287974), *pro hac vice*
jared.palmer@ogletree.com
ETHAN LAI (CA SBN 347130), *pro hac vice*
ethan.lai@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone:    415-442-4810
Facsimile:    415-442-4870

Attorneys for Defendants
FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and
FLOWERS BAKING CO. OF PORTLAND, LLC

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| CLINT PORTEOUS, individually and on behalf of others similarly-situated,<br><br>Plaintiff,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; AND FLOWERS BAKING CO. OF PORTLAND, LLC, an Oregon limited liability company,<br><br>Defendants. | Case No.: 6:23-cv-01840-AA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS AND COLLECTIVE ALLEGATIONS, AND STAY THE PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**REQUEST FOR ORAL ARGUMENT** |

## LR 7-1 CERTIFICATION

In accordance with LR 7-1, the undersigned counsel for Defendants Flowers Foods, Inc. ("Flowers Foods"), Flowers Bakeries, LLC ("Flowers Bakeries"), and Flowers Baking Co. of Portland, LLC ("FBC Portland") (collectively, "Defendants" or "Flowers"), certify that on May 15, 2024, they conferred in good faith with counsel for Plaintiff Clint Porteous ("Plaintiff" or "Porteous") through telephone conference regarding the issues raised in this Motion, but were unable to resolve them without this Court's assistance.

## MOTION

Defendants hereby move for an order compelling individual arbitration of all claims asserted in Plaintiff's Class and Collective Action Complaint ("Complaint") on the ground that a valid, written arbitration agreement governs those claims. Defendants further move for an order striking Plaintiff's class and collective action allegations and staying this action pending arbitration.

Defendants move to strike the following paragraphs and text from Plaintiff's Complaint:

| | |
|---|---|
| Page 1, Title on Caption Page: | strike "CLASS AND COLLECTIVE ACTION . . ."; |
| Pages 1 through 25, Footer: | strike "CLASS ACTION . . ."; |
| Page 2, Introductory Paragraph: | strike ". . . Class and Collective Action . . ." and ". . . and all current and former Distributors who work (or worked) for Defendants . . ."; |
| Page 5, Paragraph 12: | strike ". . . and other similarly situated Distributors. This hybrid action is brought as a 'collective' action under the Federal Labor Standards Act ('FLSA') as well as a Federal Rules of Civil Procedure, Rule 23 |

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
The KOIN Center | 222 SW Columbia
Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

|  | class action based on numerous violations of Oregon law."; |
|---|---|
| Page 8, Paragraph 21: | strike ". . . class action . . ."; |
| Pages 17 through 20: | strike Paragraphs 40 through 55 and the "FLSA COLLECTIVE ACTION ALLEGATIONS" and "CLASS ACTION ALLEGATIONS" headings therein; |
| Page 21, Paragraph 57: | strike ". . . and the FLSA Class . . ."; |
| Page 21, Paragraph 59: | strike ". . . or any member of the FLSA Class . . ."; |
| Page 21, Paragraph 61: | strike ". . . and the FLSA Class . . ."; |
| Page 21, Paragraph 63: | strike ". . . and the Oregon Class . . ."; |
| Page 22, Paragraph 67: | strike ". . . and the Oregon Class . . ."; |
| Page 22, Paragraph 69: | strike ". . . and the Oregon Class . . ."; |
| Page 22, Paragraph 70: | strike ". . . and other Delivery Employees . . ."; and |
| Page 24, Prayer for Relief: | strike Paragraphs 1 through 2 in the Prayer for Relief. |

Defendants file this Motion to Compel Individual Arbitration, Strike Class and Collective Allegations, and Stay the Proceedings pursuant to Federal Rule of Civil Procedure 12(f) and Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-4, or, in the alternative, the Oregon Uniform Arbitration Act ("UAA"), O.R.S. §§ 36.600, *et seq*.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Robert Stewart filed concurrently herewith, all the pleadings, papers, and records on file herein, all matters on which judicial notice may be taken, any oral argument that may be presented at a hearing of this Motion, and upon such other matters as this

3 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

Court deems just and necessary.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
The KOIN Center | 222 SW Columbia
Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 9

II.     FACTUAL BACKGROUND ........................................................................... 10

III.    PROCEDURAL HISTORY ............................................................................. 13

IV.     LEGAL ARGUMENT ..................................................................................... 13

        A.      The Court Should Compel Individual Arbitration Under The FAA ............... 13

        B.      The Narrow "Transportation Worker" Exemption Does Not Apply ............... 16

                1.      The Distributor Agreement Is a Commercial Contract
                        Between Two Businesses, Not a "Contract of Employment
                        of . . . Workers." ................................................................................ 17

                2.      Franchise Business Owners Like Plaintiff Are Not the Sort
                        of "Transportation Workers" Congress Designed the
                        Residual Clause to Capture ............................................................. 21

                3.      Plaintiff's Work Is Exclusively Intrastate .......................................... 23

        C.      Even If The "Transportation Worker" Exemption To The FAA
                Applied, Plaintiff's Claims Are Still Subject To Arbitration Under
                State Law ..................................................................................................... 26

V.      CONCLUSION ................................................................................................. 28

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
The KOIN Center | 222 SW Columbia
Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**CASES**

*Adams v. Parts Distrib. Xpress, Inc.*,
No. 2:20-cv-00697-JMG, 2021 WL 1088231 (E.D. Pa. Mar. 22, 2021).................................28

*Amos v. Amazon Logistics, Inc.*,
1:22-cv-55, 2022 WL 2181448 (M.D.N.C. June 16, 2022), *aff'd*, 74 F.4th 591
(4th Cir. 2023)...............................................................................................................................28

*Amos v. Amazon Logistics, Inc.*,
74 F.4th 591 (4th Cir. 2023) .....................................................................................19, 22

*AT&T Mobility, LLC v. Concepcion*,
563 U.S. 333 (2011)...................................................................................................14

*Bissonnette, et al. v. LePage Bakeries Park St., LLC, et al.*,
601 U.S. 246 (2024)...............................................................................................24, 25

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) ...............................................................................24, 25, 26

*Circuit City v. Adams*,
532 U.S. 105 (2001).............................................................................................17, 24

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) .........................................................................................15

*Cunningham v. Lyft, Inc.*,
17 F.4th 244 (1st Cir. 2021).............................................................................24, 25

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)...................................................................................................14

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)...................................................................................................17

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) .........................................................................18, 19, 20, 21

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991).....................................................................................................14

*Gist v. ZoAn Mgmt., Inc.*,
305 Or. App. 708 (Or. Ct. App. 2020) .....................................................................................15

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)...................................................................................................15

*Hamrick v. Partsfleet, LLC*,
1 F.4th 1337 (11th Cir. 2021) ...............................................................................25

*Harper v. Amazon.com Servs., Inc.*,
12 F.4th 287 (3d Cir. 2021) ...................................................................................28

*Hill v. Rent-A-Center, Inc.*,
398 F.3d 1286 (11th Cir. 2005) .............................................................22, 23, 26

*Immediato v. Postmates, Inc.*,
54 F.4th 67 (1st Cir. 2022)......................................................................................27

*Jeong v. Nexo Cap. Inc.*,
No. 21-CV-02392-BLF, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022)...............17

*U.S. ex rel. Lazar v. S.M.R.T., LLC*,
542 F. Supp. 3d 1078 (S.D. Cal. 2021)..................................................................10

*Lopez v. Biotronik, Inc.*,
No. 3:21-cv-1868-JR, 2022 WL 18587756 (D. Or. Dec. 20, 2022) ................15, 23

*Lopez v. Cintas Corp.*,
47 F.4th 428 (5th Cir. 2022) .............................................................................22, 27

*Oliveira v. New Prime, Inc.*,
857 F.3d 7 (1st Cir. 2017) ......................................................................................27

*Ortiz v. Randstad*,
95 F.4th 1152 (9th Cir. 2024) ...............................................................................26

*Palcko v. Airborne Express, Inc.*,
372 F.3d 588 (3rd Cir. 2004) ...........................................................................27, 28

*Rittman v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ................................................................................26

*Ruiz v. BrucePac, Inc.*,
No. 6:22-cv-00214-MK, 2022 WL 10665470 (D. Or. Oct. 3, 2022)................15, 16

*Saxon v. Southwest Airlines Co.*,
No. 19-cv-00403, 2023 WL 2456382 (N.D. Ill. Mar. 10, 2023) ............................28

*Shelton v. Delivery Drivers, Inc.*,
8:22-cv-02135-DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31, 2023)......................25

7 – NOTICE OF MOTION & MOTION TO COMPEL
INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE
ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF
POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
The KOIN Center | 222 SW Columbia
Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

*Short v. Uber Techs.*,
   2:21-cv-14057-AMC, 2021 WL 12267912 (S.D. Fla. Sept. 14, 2021) ...................................26

*Silva v. Schmidt Baking Distrib., LLC*,
   No. 23-cv-1695, 2024 WL 1932635 (D. Conn. May 2, 2024) .........................................19, 22

*Singh v. Uber Techs., Inc.*,
   67 F.4th 550 (3d Cir. 2023) .................................................................................................25, 27

*Sixel, LLC v. Penning*,
   No. 6:17-CV-01846-AA, 2019 WL 451796 (D. Or. Jan. 24, 2019)......................................27

*Southwest Airlines Co. v. Saxon*,
   596 U.S. 450 (2022)..................................................................................................22, 25, 27

*Tillman Transp., LLC v. MI Bus. Inc.*,
   95 F.4th 1057 (6th Cir. 2024) .............................................................................................19

*Veliz v. Cintas Corp.*,
   No. C 03-1180...................................................................................................................22, 23

*Wallace v. Grubhub Holdings, Inc.*,
   970 F.3d 798 (7th Cir. 2020) .............................................................................................25

## STATUTES

9 U.S.C. § 1...................................................................................................................... *passim*

9 U.S.C. § 2....................................................................................................................................14

9 U.S.C. § 3..............................................................................................................................10, 24

9 U.S.C. § 4..............................................................................................................................10, 14

Fair Labor Standards Act, 29 U.S.C. § 207 .................................................................................13

Illinois Uniform Arbitration Act....................................................................................................28

O.R.S. §§ 36.600, *et seq*...............................................................................................................10

## OTHER AUTHORITIES

Federal Rules of Civil Procedure Rule 12(f) ..........................................................................10, 16

8 – NOTICE OF MOTION & MOTION TO COMPEL
INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE
ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF
POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
The KOIN Center | 222 SW Columbia
Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this Motion, Defendants Flowers Foods, Inc. ("Flowers Foods"), Flowers Bakeries, LLC ("Flowers Bakeries"), and Flowers Baking Co. of Portland, LLC ("FBC Portland") (collectively, "Defendants" or "Flowers") seek to compel Plaintiff Clint Porteous ("Plaintiff" or "Porteous") to arbitrate his individual claims, as he agreed to do. The Distributor Agreement that governs the relationship between FBC Portland and Plaintiff's business, CPORT Distributing Inc ("CPORT"), incorporates an Arbitration Agreement, which expressly provides that individual arbitration is the *sole remedy* for CPORT, Plaintiff, and Defendants to resolve disputes "having any relationship or connection whatsoever with the Distributor Agreement." Each of Plaintiff's claims arises from his distributor relationship with FBC Portland and is therefore *directly and explicitly* covered by the Arbitration Agreement he signed.[1] The Arbitration Agreement, by its terms, also explicitly covers claims against FBC Portland's parents and affiliates, including Flowers Foods and Flowers Bakeries. Flowers seeks to enforce the parties' Arbitration Agreement pursuant to the FAA, 9 U.S.C. §§ 2, 3, and 4, or, alternatively, Oregon's UAA, O.R.S. §§ 36.600, *et seq*. Finally, the Arbitration Agreement expressly limits the arbitrator's authority to hear only Plaintiff's individual claims and award only individual damages, which affirmatively demonstrates the parties' intent to arbitrate only individual claims. In all events, Plaintiff has waived his right to bring a class action, rendering all class allegations immaterial and subject to strike under Rule 12(f).

Plaintiff may argue that the FAA does not apply because he falls within its "transportation

---

[1] The accompanying declaration and attached exhibit are pertinent to the instant motion and needed to assess the legal issues presented and the relief sought. Neither should convert the motion into a motion for summary judgment. *See U.S. ex rel. Lazar v. S.M.R.T., LLC*, 542 F. Supp. 3d 1078, 1082 (S.D. Cal. 2021) (citing *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

9 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

worker" exemption. *See* 9 U.S.C. § 1. That argument fails for the simple reason that the Distributor Agreement is not a contract of employment for an individual worker's work. In addition, as franchise business owners rather than transportation workers, distributors like Plaintiff are not "transportation workers" under Section 1. And even if he were, Plaintiff does not engage in interstate transportation within the meaning of the FAA. In any event, the Arbitration Agreement is independently enforceable under Oregon law, which has no transportation worker exemption.

For these reasons, and those discussed more fully below, the Court should grant Defendants' motion, compel arbitration, strike Plaintiff's class and collective allegations, and stay the action pending arbitration.

## II.    FACTUAL BACKGROUND

On September 28, 2016, Plaintiff's business, CPORT, signed a Distributor Agreement with FBC Portland under which CPORT purchased the exclusive rights to sell and distribute products within a defined geographic territory wholly within the state of Oregon. Decl. of Robert Stewart ("Stewart Decl.") ¶6, Ex. 1. Under the Distributor Agreement, CPORT purchased products from FBC Portland, took title to them, and resold them for a higher price. *Id.* at ¶12. The difference between the prices at which CPORT sold the products and the prices at which it purchased them, less CPORT's business expenses, represents CPORT's "profit margin." *Id.* Distributors like CPORT are contractually obligated to use their best efforts to increase sales in their territories and may accomplish that in several ways, including by asking for displays, providing good customer service, recommending new products, and soliciting new accounts. *Id.* at ¶¶10-12.

Because CPORT generated revenue through the sale of the products it purchased, it was in Porteous's interest to ensure that his business properly serviced existing customers and devoted time to increasing the sales in its territory through various means, such as asking for displays,

10 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

soliciting new accounts, and effective merchandising, among other things. *Id.* at ¶12. However, the Distributor Agreement does not obligate Plaintiff to perform *any* services personally. Rather, the agreement authorizes CPORT to hire employees to perform all or part of its contractual obligations. *Id.* at ¶11. Indeed, Plaintiff specifically pleads that he has done just that for the past several years. Dkt. 1, Compl., ¶ 13. Nor does the Distributor Agreement prevent CPORT or Plaintiff from operating other businesses or even from distributing products for other companies, so long as the products distributed are not directly competitive to those he distributes for Flowers. *See generally*, Stewart Decl. at ¶6, Ex. 1.

CPORT and Plaintiff also entered into Exhibit K (the Arbitration Agreement), which requires mandatory and binding arbitration of all disputes between CPORT or its owners and FBC Portland or its affiliated companies. *Id.* at ¶¶6, 8, Ex. 1, Ex. K.[2] The Arbitration Agreement provides:

> The parties agree that any claim, dispute, and/or controversy except as specifically excluded herein, that either DISTRIBUTOR (including its owner or owners) may have against COMPANY (and/or its affiliated companies . . .) or that COMPANY may have against DISTRIBUTOR … arising from, related to, or having any relationship or connection whatsoever with the Distributor Agreement between DISTRIBUTOR and COMPANY, including . . . any other association that DISTRIBUTOR may have with COMPANY ("Covered Claims") shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ("FAA") in conformity with the Commercial Arbitration Rules of the American Arbitration Association ("AAA" or "AAA Rules"), or any successor rules, except as otherwise agreed to by the parties and/or specified herein. . . .
>
> * * *
>
> Covered Claims covered under this Arbitration Agreement include, but are not limited to: breach of contract, any claims challenging the independent contractor

---

[2] Flowers Bakeries, LLC is a subsidiary of Flowers Foods, Inc. the ultimate parent company. FBC Portland is a subsidiary of Flowers Bakeries, LLC. Stewart Decl. ¶3. As explained herein, Flowers Bakeries and Flowers Foods, therefore, are "affiliated companies" and third-party beneficiaries to the Arbitration Agreement.

11 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518

status of DISTRIBUTOR, claims alleging that DISTRIBUTOR was misclassified as an independent contractor, any other claims premised upon DISTRIBUTOR's alleged status as anything other than an independent contractor, . . . claims for alleged unpaid compensation, . . . or statutory penalties under either federal or state law.

Stewart Decl. ¶8, Ex. 1, Ex. K at pp. 40-41.

Under the Arbitration Agreement, Plaintiff also explicitly agreed to waive any right to "**INITIATE OR MAINTAIN ANY COVERED CLAIM ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MULTI-PLAINTIFF BASIS IN COURT OR ARBITRATION**." *Id*. at p. 40 (emphasis in original). In addition, he signed a Personal Guaranty where he personally guaranteed the performance of and compliance with the terms and conditions of the Distributor Agreement. Stewart Decl. ¶9, Ex. 1, Ex. F. The Personal Guaranty explicitly provides that "**GUARANTOR agrees and acknowledges he/she is subject to the Arbitration Agreement attached hereto as Exhibit K.**" *Id.* at p. 35 (emphasis added).

The Arbitration Agreement states that it "shall be governed by the FAA and Oregon law to the extent Oregon law is not inconsistent with the FAA." *Id*. at ¶8, Ex. 1, Ex. K at p. 42.

On December 7, 2023, in clear violation of the Arbitration Agreement, Plaintiff filed the instant lawsuit asserting individual and collective action claims alleging that he and other Distributors in Oregon, Washington, and Idaho were misclassified as independent contractors in violation of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"). Dkt. 1, Compl., ¶¶ 1-12, 40, 49. Plaintiff also alleges individual and class claims that costs and deductions provided for in the Distributor Agreement violated Oregon law, as well as an individual claim that Defendants otherwise breached the Distributor Agreement. *Id.* at ¶¶68-78.

12 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

## III.    PROCEDURAL HISTORY

Plaintiff filed a putative class and collective action against Defendants on December 7, 2023. Dkt. 1. Defendants subsequently accepted service by Waiver of the Service of Summons on January 11, 2024, setting Defendants' responsive pleading deadline as March 11, 2024. *See* Dkt. 20 at p. 3. On March 7, 2024, the Parties stipulated to stay the case pending the United States Supreme Court's decision in *Bissonnette, et al. v. LePage Bakeries Park St., LLC, et al.*, U.S. Dkt. No. 23-51. Dkt. 20. The Court granted the Parties' stipulation to stay the case on March 11, 2024. Dkt. 21. After the Supreme Court issued its decision in *Bissonnette*, the Court lifted the stay of this action on April 18, 2024, and ordered Defendants to file a response to the Complaint by May 20, 2024. Dkt. 23. On May 16, 2024, and pursuant to stipulation, the Court subsequently ordered Defendants' deadline to file the instant Motion by May 28, 2024. Dkt. 25.

## IV.    LEGAL ARGUMENT

### A.    The Court Should Compel Individual Arbitration Under The FAA.

Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25-26 (1991). Section 4 of the FAA authorizes orders compelling arbitration where, as here, one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4; *Gilmer*, 500 U.S. at 25. As the Supreme Court has repeatedly confirmed, these provisions reflect a liberal policy mandating the enforcement of arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, where, as here, a dispute falls within the scope of a valid arbitration agreement, arbitration must be compelled. *See Dean*

13 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (same).

Those conditions are unquestionably met here. Plaintiff—both as CPORT's president and owner and individually—agreed to be bound by an Arbitration Agreement at the inception of his business relationship with FBC Portland. The Arbitration Agreement's key provisions appear in bold, underlined font and are clearly explained. *See Lopez v. Biotronik, Inc.*, No. 3:21-cv-1868-JR, 2022 WL 18587756, at *2-3 (D. Or. Dec. 20, 2022) (holding an agreement's mandatory arbitration provision was not procedurally unconscionable as the clause was "highlighted in the agreement," appeared as the "only clause in bold print," and contained "clear language"). The Arbitration Agreement advised Plaintiff in bold that he was free to seek legal counsel before signing it**.** Stewart Decl. ¶8, Ex. 1, Ex. K at p. 41.

Moreover, the agreement to arbitrate is mutual; FBC Portland agreed to pay all fees and costs typically associated with arbitration; and Plaintiff can obtain the same remedies available in court. Stewart Decl. at ¶8, Ex. 1, Ex. K at pp. 40-41. On its face, the Arbitration Agreement is valid; there is no provision Plaintiff can cite to satisfy his burden of proving invalidity. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (placing burden on party challenging arbitration agreement); *Gist v. ZoAn Mgmt., Inc.*, 305 Or. App. 708, 716 (Or. Ct. App. 2020) (same); *see also Ruiz v. BrucePac, Inc.*, No. 6:22-cv-00214-MK, 2022 WL 10665470, at *5 (D. Or. Oct. 3, 2022) (finding arbitration agreement enforceable because its "procedures appl[ied] equally to both parties" and was "binding on both parties who [were] subject to the same discovery rules"); *Gist*, 305 Or. App. at 718-22, 725 (same where agreement did not impose a "predetermined and disproportionate division of fees upon plaintiff" and included an "even-handed" provision that provided each party was responsible for paying their own attorneys' fees).

14 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

Without question, Plaintiff's claims are covered by the Arbitration Agreement. The Agreement requires "Distributor (including its owner or owners)," and FBC Portland to submit to "binding arbitration" all "claims, disputes, and/or controversies . . . arising from, related to or having any connection whatsoever with the Distributor Agreement," the "services provided" thereunder, or "any other association" between Distributor and Flowers. Stewart Decl. ¶8, Ex. 1, Ex. K at p. 40. This includes but is not limited to "any claims challenging the independent contractor status of DISTRIBUTOR, claims alleging that DISTRIBUTOR was misclassified as an independent contractor, any other claims premised upon DISTRIBUTOR's alleged status as anything other than an independent contractor . . . and claims for alleged unpaid compensation . . . under either federal or state law." *Id.* at p. 41. Those are exactly the claims asserted in the Complaint. Dkt. 1, Compl., ¶¶ 1-11, 24-39, 56-72.

Finally, the Arbitration Agreement precludes arbitration of claims or remedies on a class or collective basis. The Arbitration Agreement expressly states that the parties "understand that there is no right or authority for any Covered Claim to be heard or arbitrated" on a class or collective basis. Stewart Decl. ¶8, Ex. 1, Ex. K at p. 40. The arbitrator's authority is expressly limited to "award[ing] damages on an individual basis only" and hearing only Plaintiff's individual claims. *Id.* Those express limits on the arbitrator's authority affirmatively prove the parties' intent to prohibit class or collective arbitration; thus, Defendants move to compel solely Plaintiff's individual claims.

In all events, Plaintiff's class and collective allegations (Dkt. 1, Compl., ¶¶ 40-55) should be stricken under Rule 12(f).[3] Federal Rule of Civil Procedure 12(f) allows the court to strike any

---

[3] *See* Notice of Motion and Motion for specific allegations and language to strike from Complaint.

15 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

"redundant, immaterial, impertinent, or scandalous material." Where a valid contractual waiver bars a plaintiff from asserting claims on a class or collective basis, class and collective action allegations are, by definition, immaterial and impertinent and should be stricken. *See Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2022 WL 3590329, at *16 (N.D. Cal. Aug. 22, 2022) (striking class allegations on waiver grounds). Here, there is no dispute that Plaintiff affirmatively waived his ability to initiate or maintain any class or collective action (whether in a court or arbitral proceeding), to serve as a class representative, and to recover damages on a class or collective basis in the Arbitration Agreement. Stewart Decl. ¶8, Ex. 1, Ex. K at p. 40. In addition, there is no allegation, and can be no allegation, that this waiver is invalid. The binding contractual language is clear, bolded and in all capital letters, *see id.*, and the U.S. Supreme Court has definitively held that class waivers in arbitration agreements must be enforced under the FAA. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 525 (2018). Accordingly, Plaintiff can maintain no class or collective action at all, let alone in arbitration, rendering his class and collective allegations irrelevant, immaterial and impertinent.

**B.    The Narrow "Transportation Worker" Exemption Does Not Apply.**

To the extent Plaintiff attempts to invoke FAA Section 1 to avoid federal enforcement of the Arbitration Agreement, that attempt should fail. Section 1 establishes a limited exemption from the FAA for "transportation workers"—specifically, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see also Circuit City v. Adams*, 532 U.S. 105, 115-16 (2001) (holding residual clause should be narrowly construed). Plaintiff is obviously not a railroad employee or seaman. And he does not fit within the residual clause for at least three, independent reasons: (1) the Distributor Agreement is not a "contract of employment of . . . workers" within the meaning of Section 1; (2) franchise

16 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

business owners like Plaintiff are not "transportation workers" like seamen or railroad employees; and (3) Plaintiff's work is purely intrastate, so he is not "engaged in foreign or interstate commerce" for purposes of Section 1.

> **1.    The Distributor Agreement Is a Commercial Contract Between Two Businesses, Not a "Contract of Employment of . . . Workers."**

Section 1's exemption applies only to arbitration agreements contained in "contracts of employment of . . . workers." The Ninth Circuit's recent decision in *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024), forecloses any attempt by Plaintiff to argue that the Distributor Agreement—which is a commercial agreement between two businesses—fits that bill. *Fli-Lo Falcon* involved commercial contracts between Amazon and entities that agreed to provide local delivery services to Amazon's customers. *See id.* at 1192. The Ninth Circuit held that Section 1 did not apply to arbitration agreements contained in those business-to-business contracts for two related reasons.

*First*, basic canons of statutory interpretation confirm that "business entities" are not "workers." *Id.* at 1195. As the Ninth Circuit recognized, the Supreme Court has repeatedly held that the maxim *ejusdem generis* guides the interpretation of Section 1's residual clause. *Id.* at 1194 (citing *Circuit City*, 532 U.S. at 114-15). That means that the "other class of workers" category must be "'controlled and defined by reference to [those] enumerated categories of workers which are recited just before it'"—*i.e.*, "seamen" and "railroad employees." *Id.* at 1194-95 (quoting *Circuit City*, 532 U.S. at 115). "[T]he word 'seamen' and the phrase 'railroad employees' describe natural persons who are individual workers." *Id.* at 1195. Thus, the "*residual* category, 'any other class of *workers*'—which is to be afforded a narrow construction—cannot do the heavy lifting of expanding the transportation worker exemption to cover non-natural persons like . . . business

17 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

entities." *Id.* (internal citation and some internal quotation marks omitted). Other courts, the Ninth Circuit recognized, have reached similar conclusions. *See, e.g.*, *Tillman Transp., LLC v. MI Bus. Inc.*, 95 F.4th 1057, 1064 (6th Cir. 2024) ("Here, the district court correctly concluded that Section 1's exemption did not apply to limited liability companies like Tillman Transportation."); *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 596 (4th Cir. 2023) ("Seamen and railroad employees, of course, are natural persons—*individual* workers carrying out work.").

*Second*, "'contracts of employment' in the transportation worker exemption do not extend to commercial contracts." *Fli-Lo Falcon*, 97 F.4th at 1196. As the Ninth Circuit explained, "for a contract to *be* a contract of employment covered by § 1, it must have a *qualifying worker* as one of the parties." *Id.* at 1196-97. Per the Supreme Court's decision in *New Prime Inc. v. Olivera*, "the transportation worker exemption's use of the phrase 'contracts of employment' is intended to 'capture any contract for the performance of *work* by *workers*.'" *Id.* at 1197 (quoting *New Prime Inc. v. Oliveira*, 586 U.S. 105, 116 (2019)). But that category does not encompass "a commercial contract between two business entities." *Id.* As the Ninth Circuit recognized, "no authority" supports the proposition "that the transportation worker exemption can apply" to business-to-business contracts. *Id.* Many courts have held exactly the opposite. *See id.* (collecting cases); *see also, e.g.*, *Amos*, 74 F.4th at 596 ("[T]he Agreement at hand simply is not a 'contract of employment'—it does not promise work and compensation to an individual employee, and it contains none of the hallmarks of a traditional employment contract, such as provisions regarding salary, benefits, and leave time."); *Silva v. Schmidt Baking Distrib., LLC*, No. 23-cv-1695, 2024 WL 1932635, at *5 (D. Conn. May 2, 2024) ("While the Supreme Court has not decided whether § 1 applies to contracts between two business entities, several lower courts [including *Fli-Lo Falcon*] have reached this question and have uniformly answered it in the negative. . . . I agree

with the holding of these cases.").

   *Fli-Lo Falcon* controls this case. Just as in *Fli-Lo-Falcon*, the only parties to the Distributor Agreement are "business entities." The Distributor Agreement's first page establishes that it is "between Flowers Baking Co. of Portland, LLC, with its office and principal place of business at 14128 Ne Airport Way, Portland, OR. 97230 . . . [and] CPORT Distributing, Inc, a[n] Oregon corporation, with its principal place of business at 408 NW Hill St, Bend, OR 97703." Stewart Decl. ¶6, Ex. 1, at p. 3 (Distributor Agreement Preamble). The signature blocks on its last page demonstrate the same, with lines only for "Distributor" and "Company." *Id.* at ¶6, Ex. 1, at p. 24. Neither Plaintiff nor any other natural person is a party to the Distributor Agreement.

   Moreover—and again just as in *Fli-Lo Falcon*—the Distributor Agreement calls for a business entity to perform services, not for a specific worker to perform work. In *Fli-Lo Falcon*, the contract specified that the local delivery companies had "exclusive responsibility for [their] Personnel, including exclusive control over compensation, hours, and working conditions." 97 F.4th at 1197 (brackets in original). Here, too, the Distributor Agreement places the obligation to distribute and sell Flowers' products squarely on CPORT. *See* Stewart Decl. ¶6, Ex. 1, at pp. 6-7, 10, 13, §§ 5.1, 5.2, 9.1, 14.1. The Distributor Agreement is explicit that "DISTRIBUTOR"—*i.e.*, CPORT—"shall not be controlled by [Flowers] as to the specific details or manner and means of DISTRIBUTOR's business." *Id.* at ¶6, Ex. 1, at pp. 15-16, §16.1. The Distributor Agreement also makes clear that CPORT and Flowers are not "joint employers" and are not acting in "any other legal capacity other than separate and distinct businesses acting pursuant to the terms of this Agreement." *Id.* Plaintiff is expressly defined in the Distributor Agreement as CPORT's "Owner." *Id.* at ¶6, Ex. 1, at pp. 5, 34, § 2.10, and Ex. E. In that capacity, he undertook various obligations—such as executing a personal guaranty and ensuring that CPORT remained a validly-established

19 – NOTICE OF MOTION & MOTION TO COMPEL
INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE
ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF
POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
The KOIN Center | 222 SW Columbia
Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

corporate entity. *Id.* at ¶6, Ex. 1, at pp. 5, 35, §§ 2.10, Ex. F. But he lacked any contractual obligation to personally perform work. To the contrary, the Distributor Agreement could not be clearer that it "does not require that DISTRIBUTOR's obligations hereunder be conducted personally, or by any specific individual in DISTRIBUTOR's organization," *id.* at ¶6, Ex. 1, at p.16, § 16.2, and that "DISTRIBUTOR shall be free to engage such persons as DISTRIBUTOR deems appropriate to assist in discharging DISTRIBUTOR's responsibilities hereunder," *id.* Indeed, CPORT took full advantage of these provisions, as the actual distribution work has—for the last several years—been carried out not by Plaintiff himself, but by "a helper." Dkt. 1, Compl., ¶ 13.

Accordingly, just as in *Fli-Lo Falcon*, Section 1 does not apply here. The Distributor Agreement is a contract for services between two business entities, not a "'contract[] of employment'" "'for the performance of *work* by *workers*.'" *Fli-Lo Falcon*, 97 F.4th at 1197 (quoting *New Prime*, 586 U.S. at 116).

While Plaintiff is a party to the Arbitration Agreement, that does not somehow transform Plaintiff into a Section 1 transportation worker. The Arbitration Agreement merely obligates the Distributor *and* Plaintiff to arbitrate any claims either or both might assert "arising from, related to, or having any relationship or connection whatsoever with the Distributor Agreement," including claims alleging "misclassif[ication]" or "unpaid compensation." *See* Stewart Decl. ¶8, Ex. 1, Ex. K at pp. 40-41 (defining DISTRIBUTOR to include "its owner or owners" for purposes of the arbitration agreement only and defining the covered claims to include those asserted here). In other words, it simply requires Plaintiff to arbitrate his personal claims if he attempts to disregard the corporate formalities of the Distributor Agreement (as he has done here). The Arbitration Agreement does not require Plaintiff to perform work, nor does it alter any of the aforementioned provisions of the Distributor Agreement that preclude the application of Section

20 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

61814387.v3-OGLETREE

1. *See, e.g.*, *Silva*, 2024 WL 1932635, at *5, *7 (holding distribution agreement outside of Section 1's scope when executed between businesses and holding business owner bound by arbitration agreement); *see also Amos*, 74 F.4th at 596-97 (same).

> **2.    Franchise Business Owners Like Plaintiff Are Not the Sort of "Transportation Workers" Congress Designed the Residual Clause to Capture.**

Even assuming the Distributor Agreement were a "contract of employment," franchise business owners like Plaintiff would not be "transportation workers" under Section 1 in either event. To determine whether a class of workers falls within the residual clause, the court must assess the responsibilities of the "class of workers" to which a plaintiff belongs. *See Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 456 (2022). Because distributors of Flowers' bakery products are franchise business owners with a wide array of sales and other responsibilities and no obligation to perform *any* transportation work, they are not covered by Section 1. Stewart Decl. ¶¶6, 10-12, Ex. 1.

As the Eleventh Circuit recognized in *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286 (11th Cir. 2005), Section 1 was not designed to cover "transportation activity incidental to . . . employment as an account manager." *Id.* at 1289. Similarly, in *Lopez v. Cintas Corp.*, 47 F.4th 428 (5th Cir. 2022), the Fifth Circuit held that Section 1 did not apply to workers who had "a more customer-facing role" with "an emphasis on sales and customer service." *Id.* at 433. And in *Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2452851, at *8 (N.D. Cal. Apr. 5, 2004), *modified on reconsideration*, 2005 WL 1048699 (N.D. Cal. May 4, 2005), the court found that sales representatives ("SSRs") were not transportation workers, either. *Id.*

21 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

> While SSRs deliver goods, they also perform customer service functions. They note supply levels at different customer sites and re-stock those supplies. They pick-up used or dirty products such as uniforms and mats and replace them with new ones. These job duties certainly entail driving. They do not, however, entail delivery of product in the same manner that a truck driver does. The primary duty of SSRs is more akin to customer service than it is to a warehouse trucker, railroad employee or seamen. Accordingly, based on the evidence at hand, SSRs are not transportation workers within the meaning of the FAA exemption.

*Id*. at *10.

Plaintiff's role as a franchise business owner is even further afield from transportation work than the employees in *Hill*, *Lopez*, and *Veliz*. Flowers Distributors like Plaintiff own the distribution rights to market, sell, and distribute Flowers products—which they purchase and take title to—within defined geographic territories. Stewart Decl. ¶¶6, 7, 10-13, Ex. 1, at pp. 6, 12, §§ 4.1, 11.1. They can expand their businesses by growing sales, cutting costs, or acquiring additional territories. *See, e.g.*, *id.* at pp. 6-7, 11, §§ 5.1, 10.1 (agreed to maximize sales). They may also sell all or portions of those businesses to third parties. *Id.* at ¶¶6, 11, Ex. 1, at pp. 13-14, § 15.1. They are responsible for all tax, accounting, and reporting obligations, as well as for securing vehicles and insurance. *See, e.g.*, Stewart Decl. ¶6, Ex. 1, at pp. 10-11, 15-16, §§ 9.1-9.3, 15.4, 16.4. They may also hire employees. *Id.* at ¶6, Ex. 1, at p. 16, §§ 16.2-16.3. Indeed, Plaintiff has lived out of state and employed a helper to service his customers since late 2021. Dkt. 1, Compl., ¶ 13 ("In late 2021, Plaintiff moved out of state and has had a helper operate his territory during that period."). They have zero obligation to personally transport a single good. Stewart Decl. ¶6, Ex. 1, at p. 16, § 16.2.

Because Flowers Distributors like Plaintiff are business owners with a broad array of responsibilities who look nothing like the "seamen" and "railroad employees" Section 1 expressly contemplates, *see* 9 U.S.C. § 1, Section 1 does not apply.

22 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

### 3.    Plaintiff's Work Is Exclusively Intrastate.

Finally, Plaintiff is not covered by Section 1 for the independent reason that he works exclusively within the bounds of a defined, intrastate territory. Stewart Decl. ¶¶6, 7, Ex. 1, at pp. 25-27, Ex. A. The transportation worker exemption applies only to class of workers who are "*engaged* in . . . interstate commerce." 9 U.S.C. § 1 (emphasis added). This is a far more demanding test than, for example, Section 2 of the FAA, which uses the broader formulation: "contract evidencing a transaction involving commerce." *Id*. at § 2. The Supreme Court has held that this difference reflects a deliberate distinction: while Section 2's use of "the word 'involving . . . signals an intent to exercise Congress' commerce power to the full" the words "engaged in commerce" in Section 1 "have a more limited reach." *Circuit City*, 532 U.S. at 115. It, therefore, does not apply to "all employment contracts," *id*. at 119, but only those of workers who are "actively . . . engaged in transportation of goods across borders via the channels of interstate commerce." *Bissonnette, et al. v. LePage Bakeries Park St., LLC, et al.*, 601 U.S. 246, 256 (2024) (quoting *Saxon*, 596 U.S. at 458); *see also Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021) (plaintiffs must belong to a class of workers "primarily devoted to the movement of goods and people beyond state boundaries"). As the Ninth Circuit has instructed when finding Uber drivers *were not* engaged in interstate commerce for purposes of Section 1, "the residual exemption is . . . about what the worker does,' not just 'where the goods [or people] have been.'" *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863-86 (9th Cir. 2021) (*quoting In re Grice*, 974 F.3d 950, 958 (9th Cir. 2020), and *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020)) (contrasting the other enumerated categories of workers in Section 1 like seaman or railway workers, where "the interstate movement of goods and passengers over long distances and across national or state lines is an indelible and 'central part of the job description.'")

23 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

Plaintiff and other Flowers Distributors play no role—much less a "direct and necessary" one—in the free flow of goods across borders. *Saxon*, 596 U.S. at 458; *Bissonnette*, 601 U.S. at 256. Nor is the transport of goods across borders a "central part" of their job description. Rather, Flowers Distributors are in "the business of facilitating local, intrastate" sales. *Cunningham*, 17 F.4th at 253. Plaintiff services a territory entirely within the state of Oregon. Stewart Decl. ¶¶6, 7, Ex. 1, at pp. 25-27, Ex. A. He does not transport goods across state lines, nor does he load goods into, or unload goods out of, vehicles traveling interstate. *Id.* at ¶¶6, 7, 13, Ex. 1. Plaintiff is therefore unlike the "ramp supervisor" in *Saxon* whose "work frequently requires her to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country." 596 U.S. at 453. Because the services provided by the plaintiff are "primarily local and intrastate in nature," the transportation worker exemption in the FAA does not apply. *Capriole*, 7 F.4th at 863-86 (finding that "Uber drivers, as a nationwide 'class of workers' [were] not 'engaged in foreign or interstate commerce" because the services they provided were "primarily local and intrastate in nature").

The fact that the goods Plaintiff distributes may have moved across state lines at some point is insufficient to trigger the exemption. *Id.* at 863-64; *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 553, 560 (3d Cir. 2023) (rejecting Section 1 claim by Uber drivers because "[t]he work of Uber drivers is centered on local transportation," even though drivers sometimes cross state lines in the course of their work); *Wallace*, 970 F.3d at 802 (rejecting argument that simply "carry[ing] goods that have moved across state and even national lines" is sufficient to trigger the exemption). "[T]o fall within the exemption, the workers must be connected not simply to the goods, but to the act of moving those goods across state or national borders." *Wallace*, 970 F.3d at 802; *see also Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1350-51 (11th Cir. 2021); *Shelton v. Delivery Drivers,*

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
The KOIN Center | 222 SW Columbia
Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

*Inc.*, 8:22-cv-02135-DOC, 2023 WL 2629027, at *3-4 (C.D. Cal. Jan. 31, 2023) (compelling arbitration because the plaintiffs "transport local merchandise to local customers" and were not involving in completing the "last leg of a single, unbroken trip.").[4]

This case is readily distinguishable, moreover, from cases holding that workers in an unbroken, interstate chain of distribution can be engaged in interstate commerce even if they do not cross state lines.  In *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), the Ninth Circuit held that workers executing unified "interstate transactions between Amazon and the customer [that] do not conclude until the packages reach their intended destinations" are engaged in interstate transportation for purposes of Section 1. *Id.* at 916. Similarly, in *Ortiz v. Randstad*, 95 F.4th 1152 (9th Cir. 2024), the court held that warehouse workers who moved goods to facilitate their "continued travel through an interstate supply chain" were covered by Section 1. *Id.* at 1163. Those cases recognized, however, that an interstate transportation chain may be broken if, after interstate shipment, the goods "c[o]me to rest" where they are subject to "new or subsequent transactions." *Rittman*, 971 F.3d at 916 (citation omitted).

That is the case here. The goods Plaintiff delivers to his customers (either individually or through employees he hires) are dropped off at his local warehouse in Oregon. They are then packed out for him. Plaintiff takes title to the goods upon picking them up and sells them to his customers, entirely within his local distribution territory in Oregon. Stewart Decl. ¶¶6, 7, 13, Ex. 1, at pp. 25-27, 38, §§ 2.5, 11.1, Exs. A and I. He bears any profit or loss that may result, and

---

[4] While Plaintiff might argue a small subset of Distributors occasionally cross state lines in the course of their work, that is not enough to trigger the exemption. *See Short v. Uber Techs.*, 2:21-cv-14057-AMC, 2021 WL 12267912, at *3-4 (S.D. Fla. Sept. 14, 2021) (workers not engaged in commerce where 12.8% of drivers made interstate trips during the last year, accounting for less than 2% of the trips); *Capriole*, 7 F.4th 854, 864 (9th Cir. 2021) (Uber drivers not exempt under Section 1 because their "work 'predominantly entail[ed] intrastate trips'"); *Hill*, 398 F.3d at 1289-90 (class of workers who only "incidentally" transport goods across state lines not exempt).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

transports his goods to his customers. Stewart Del. ¶¶6, 13, Ex. 1, at p. 6, § 4.1; *see also* Dkt. 1, Compl., ¶ 27. In short, Plaintiff is engaged in his own "fundamentally local" intrastate business, not in "interstate commerce" under Section 1. *Singh*, 67 F.4th at 553; *see Lopez*, 47 F.4th at 433 (exemption does not apply to "local delivery drivers" because "[o]nce the goods arrived at the Houston warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce"); *Immediato v. Postmates, Inc.*, 54 F.4th 67, 76 (1st Cir. 2022) ("once an interstate shipment arrives at a local retailer and is 'there held solely for local disposition and use,' the goods are no longer considered to be 'in interstate commerce' for purposes of Section 1). He operates a "fundamentally local" franchise business that is not covered by Section 1.

## C.     Even If The "Transportation Worker" Exemption To The FAA Applied, Plaintiff's Claims Are Still Subject To Arbitration Under State Law.

Even if the transportation worker exemption applied, arbitration would still be required under Oregon law. Section 1 "has no impact on other avenues (such as state law) by which a party may compel arbitration," because it applies "only when arbitration is sought under the FAA." *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 24 (1st Cir. 2017). Thus, when Section 1 applies, it is "as if the FAA 'had never been enacted.'" *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3rd Cir. 2004). And here, "Oregon, like the federal courts, recognizes a presumption in favor of arbitrability." *Sixel, LLC v. Penning*, No. 6:17-CV-01846-AA, 2019 WL 451796, at *2 (D. Or. Jan. 24, 2019). Here, therefore, this Court should still compel arbitration under applicable state law even if the transportation worker exemption is found to apply.

That is exactly what happened after the Supreme Court determined in *Saxon* that the plaintiff belonged to a class of transportation workers who fell within the Section 1 exemption. On remand, the district court ordered the named plaintiff's claims into individual arbitration pursuant

26 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

to the Illinois Uniform Arbitration Act "because she signed an enforceable contract under Illinois state law." *Saxon v. Southwest Airlines Co.*, No. 19-cv-00403, 2023 WL 2456382, at *4 (N.D. Ill. Mar. 10, 2023). The Ninth Circuit reached the same result in *Romero v. Watkins and Shepard Trucking, Inc.*, compelling arbitration of an employee's claims pursuant to Nevada law where an FAA exemption applied. No. 20-55768, 2021 WL 3675074, at *2-3 (9th Cir. Aug. 19, 2021). Other Courts of Appeals have reached the same result. *See, e.g.*, *Palcko*, 372 F.3d at 596 (holding that the FAA-exempted agreement to arbitrate could still be subject to arbitration pursuant to Washington state law); *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021) (same). Indeed, courts often compel arbitration under state law without deciding whether the FAA exemption applies at all. *See, e.g.*, *Amos v. Amazon Logistics, Inc.*, 1:22-cv-55, 2022 WL 2181448, at *5 (M.D.N.C. June 16, 2022), *aff'd*, 74 F.4th 591 (4th Cir. 2023) (declining to address Section 1 exemption under the FAA and enforcing arbitration agreement under Washington law); *Adams v. Parts Distrib. Xpress, Inc.*, No. 2:20-cv-00697-JMG, 2021 WL 1088231, at *4 (E.D. Pa. Mar. 22, 2021) (same).

This Court should follow the same course here. Plaintiff's claims should be compelled to individual arbitration under Oregon law regardless of whether the Section 1 exemption applies.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

V.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their motion to compel the arbitration of Plaintiff's individual claims, strike the class and collective allegations, and stay the action pending arbitration of Plaintiff's individual claims.

Dated:  May 28, 2024

<div style="margin-left:40%">

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:    */s/ Jared L. Palmer* (CA SBN 287974)
Elizabeth A. Falcone (OSB No. 111694)
Jared L. Palmer (CA SBN 287974), pro hac vice
Ethan Lai (CA SBN 347130), pro hac vice
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Tel: (415) 442-4810
Fax: (415) 442-4870
Email: elizabeth.falcone@ogletree.com
Email: jared.palmer@ogletree.com
Email: ethan.lai@ogletree.com

Attorneys for Defendants
FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS BAKING CO. OF PORTLAND, LLC

</div>

28 – NOTICE OF MOTION & MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS & COLLECTIVE ALLEGATIONS, & STAY THE PROCEEDINGS; MEMO OF POINTS & AUTHORITIES

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone:  503.552.2140 | Fax: 503.224.4518