**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (CA SBN 178444)*
Shaun Markley (CA SBN 291785)*
Jordan Belcastro (CA SBN 339570)*
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

*Pro Hac Vice*

Attorneys for Plaintiff,
CLINT PORTEOUS

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| CLINT PORTEOUS, individually and on behalf of others similarly-situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; and FLOWERS BAKING CO. OF PORTLAND, LLC, an Oregon limited liability company,<br><br>            Defendants. | Case No. 6:23-cv-01840-AA<br><br>**PLAINTIFF CLINT PORTEOUS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS AND COLLECTIVE ALLEGATIONS, AND STAY THE PROCEEDINGS**<br><br>**REQUEST FOR ORAL ARGUMENT** |

Plaintiff's Opposition to Defendants' Motion to Compel Individual Arbitration, Strike Class and Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

## TABLE OF CONTENTS

I.      **INTRODUCTION**.................................................................................... 1

II.     **RELEVANT BACKGROUND** ............................................................... 3

      A.     **Flowers' direct-store-delivery business and Distributors'
           role within that business.**................................................................ 3

      B.     **This is an employment lawsuit challenging Flowers'
           misclassification of its Distributors as "independent
           contractors" and not employees.** ............................................... 6

      C.     **Flowers is frequently found liable as an employer of its
           Distributors as will be the case here.**........................................ 6

III.    **ARGUMENT** .......................................................................................... 9

      A.     **Contracts addressing transportation workers' employment
           disputes are expressly carved out of the FAA.** ....................... 11

           1.     *New Prime answers the question presented here.* ................... 11

           2.     *Flowers' presents distinguishable and non-binding
                 authorities to work around New Prime.*.................................... 14

      B.     **The class of Distributors readily meets the two-part
           *Saxon* test for being engaged in interstate commerce.**................... 18

      C.     **Flowers cannot use Oregon law to enforce any arbitration
           obligations in light of the plain language of its agreement.**............ 26

      D.     **The vague motion to strike should be denied.** ................................... 28

IV.     **CONCLUSION** ................................................................................... 28

i – Table of Contents                                    NICHOLAS & TOMASEVIC, LLP
                                     225 Broadway, 19th Fl., San Diego, California 92101
                                     Tel: (619) 325-0492 | Fax: (619) 325-0496

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935)..................................................................................... 24

*Ackerman v. Bridgetown Nat. Foods LLC*,
No. 3:23-CV-1012-JR, 2024 WL 421000 (D. Or. Jan. 19, 2024) ............................ 27

*Alexander v. FedEx Ground Package Sys., Inc.*,
765 F.3d 981 (9th Cir. 2014) ............................................................................. 9

*Amos v. Amazon Logistics, Inc.*,
74 F.4th 591 (4th Cir. 2023) ..................................................................... 15, 16

*Bissonnette v. LePage Bakeries Park St., LLC*,
601 U.S. 246 (2024).......................................................................................... 10

*Brock v. Flowers Food, Inc.*,
673 F. Supp. 3d 1180 (D. Colo. 2023)....................................................... 19, 21, 27

*Canales v. CK Sales Co., LLC*,
67 F.4th 38 (1st Cir. 2023)........................................................................... 10, 21

*Canava v. Rail Delivery Serv. Inc.*,
2020 WL 2510648 (C.D. Cal. Feb. 27, 2020)....................................................... 13

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) ............................................................................... 25

*Carmona Mendoza v. Domino's Pizza, LLC*,
73 F.4th 1135 (9th Cir. 2023) ............................................................... 21, 23, 24

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001).......................................................................................... 12

*Cortes-Diaz v. DL Reforestation, Inc.*,
No. 1:20-CV-00666-CL (D. Or., Mar. 21, 2022) ................................................... 7

*Cunningham v. Lyft, Inc.*,
17 F.4th 244 (1st Cir. 2021)............................................................................... 25

*Dinicola v. State, Dept. of Revenue*,
246 Or.App. 526 (Or. Ct. App. 2011)................................................................... 7

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

*Doe v. Swift Transportation Co.*,
   No. 2:10-CV-00899 JWS,
   2017 WL 67521 (D. Ariz. Jan. 6, 2017) ................................................................. 18

*Domino's Pizza, LLC v. Carmona*,
   144 S. Ct. 1391 (2024) ........................................................................................... 21

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ................................................................................................ 28

*Fli-Lo Falcon, LLC v. Amazon.com Inc.*,
   2022 WL 4451273 (W.D. Wash. Sept. 8, 2022) ...................................................... 15

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
   97 F.4th 1190 (9th Cir. 2024) ........................................................................... 14, 15

*Goro v. Flowers Foods, Inc.*,
   2021 WL 4295294 (S.D. Cal. Sept. 21, 2021) ......................................................... 6

*Herrera v. Flowers Baking Co. of Modesto, LLC*,
   2024 WL 2722861 (E.D. Cal. May 28, 2024) ........................................................... 7

*Hollis v. SKC Inv., Inc.*,
   No. 3:22-CV-00920-HZ,
   2023 WL 8935403 (D. Or. Dec. 26, 2023) ............................................................... 7

*Immediato v. Postmates, Inc.*,
   54 F.4th 67 (1st Cir. 2022) ............................................................................... 25, 26

*Jeong v. Nexo Cap. Inc.*,
   2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ......................................................... 28

*Lopez v. Cintas Corp.*,
   47 F.4th 428 (5th Cir. 2022) .................................................................................... 23

*Miller v. Amazon.com, Inc.*,
   No. 21-36048,
   2023 WL 5665771 (9th Cir. Sept. 1, 2023) ............................................................. 13

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) ................................................................................................ 27

*New Prime Inc. v. Oliveira*,
   586 U.S. 105 (2019) .......................................................................................... 11, 12

*Oliveira v. New Prime, Inc.*,
   141 F. Supp. 3d 125 (D. Mass. 2015) ..................................................................... 12

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

*Ortiz v. Randstad Inhouse Servs., LLC,*
  95 F.4th 1152 (9th Cir. 2024) ................................................... 20

*Rittmann v. Amazon.com, Inc.,*
  383 F. Supp. 3d 1196 (W.D. Wash. 2019) .................................. 13

*Rittmann v. Amazon.com, Inc.,*
  971 F.3d 904 (9th Cir. 2020) ........................... 13, 19, 20, 23, 24

*Singh v. Uber Techs., Inc.,*
  67 F.4th 550 (3d Cir. 2023) ...................................................... 26

*Slayman v. FedEx Ground Package Sys., Inc.,*
  765 F.3d 1033 (9th Cir. 2014) .................................................... 9

*Southwest Airlines Co. v. Saxon,*
  596 U.S. 450 (2022) ............................................... 18, 19, 20, 23

*Tillman Transportation, LLC v. MI Bus. Inc.,*
  95 F.4th 1057 (6th Cir. 2024) ................................................... 15

*Valdez v. Shamrock Foods Co.,*
  2023 WL 2624438 (C.D. Cal. Mar. 16, 2023) ........................... 21

*Wallace v. Grubhub Holdings, Inc.,*
  970 F.3d 798 (7th Cir. 2020) .................................................... 24

*Wynn v. United Parcel Serv., Inc.,*
  No. 21-CV-10029-CRB,
  2022 WL 18912481 (N.D. Cal. Oct. 4, 2022) ............................ 20

## Statutes

9 U.S.C. § 1 ................................................................................. 2, 19

Or. Rev. Stat. Ann. § 36.620 ........................................................... 27

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

## I.    __INTRODUCTION__

Plaintiff Clint Porteous brings this hybrid class and collective action under state and federal employment laws relating to Defendants' denial of basic wage obligations for misclassified "Distributors" like Plaintiff. *See generally*, Dkt. 1 ("Complaint"). Defendants'[1] (collectively, "Flowers") operate a multi-billion dollar direct-store-delivery baking business and offer their household name brands like Wonder Bread and Tastykake to retail stores like Walmart, Costco, and Albertsons. Defendants bake their products all over the Country and ship them to local warehouses. This is where Plaintiff and other Distributors pick up the products and carry out the last-mile of the direct-store-delivery that Flowers promises to its customers.

While Flowers classifies its Distributors as "independent contractors," under the "Distributor Agreement"[2] that Distributors must sign to obtain the job, the reality is that they act as employees. Courts and the Department of Labor have already determined that Flowers misclassifies its Distributors. Similar findings routinely occur under Oregon and federal employment law under analogous "independent contractor" agreements used by similar companies. The same result will follow here and it is more than adequately alleged at this pleadings stage.

To avoid the massive liability that Flowers creates for itself through its "independent contractor" model, it seeks to shift these employment claims challenging its independent contractor model to individual arbitration. Flowers' Motion to Compel Individual Arbitration, Strike Class

---

[1] Plaintiff generally uses "Defendants" or "Flowers" where the specific named Defendant is not pertinent to the argument. Plaintiff also adopts Defendants' use of "FBC Portland" when specifically discussing Flowers Baking Co. of Portland, LLC. Motion, 1.

[2] This document is available at Dkt. 28-1. Plaintiff calls it the "Distributor Agreement" and when referring to the arbitration attachment at Ex. K to that document, the "Arbitration Agreement."

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

and Collective Allegations, and Stay the Proceedings (Dkt. 27; "Motion") should be denied in its entirety. Flowers' primary argument is that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), requires arbitration of this employment dispute. However, the FAA exempts from its coverage arbitration agreements contained in contracts of employment of workers in the transportation industry where the workers frequently interact with goods moving interstate. The Ninth Circuit recognizes that last-mile delivery workers carrying out purely intrastate deliveries of products that previously moved interstate are FAA exempt. The Supreme Court also recently concluded that the FAA exemption applies to employment claims pursued by workers designated as "independent contractors."

Flowers tries to work around these binding authorities in unconvincing fashion. First, it ignores the employment claims at issue here and spins this as a "commercial" dispute. It leans on inapt case law addressing breach of contract claims pursed by business entity plaintiffs. In this way it tries to elevate the "independent contractor" labels in its carefully drafted hiring agreements, but such labels are not controlling and are set aside by courts addressing employment status.

Defendants also argue that the Distributors are not sufficiently engaged in interstate commerce, but much like last-mile Amazon and Domino's delivery drivers that the Ninth Circuit finds FAA exempt, these individuals receive fresh product originating out of state from a local warehouse and are charged with the final leg of the products' interstate journey – getting it onto local retail shelves.

Defendants also seek to enforce their arbitration clause under Oregon law, but the plain language of the agreement only permits Oregon law to apply where it is consistent with the FAA. Because the FAA excludes transportation workers pursuing employment claims from having to arbitrate, the parties' agreement does not allow Oregon law to send disputes to arbitration that the

2 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

FAA would not. Further still, Oregon has special procedures in place that must be followed if an employer wants to compel an employee to arbitration. Flowers fails to meet its burden to show it satisfied these procedures and it is clear it did not do so.

Finally, Flowers' motion to strike the class and collective claims rests on the enforceability of its arbitration agreement. With no enforceable agreement to arbitrate, the class and collective action waiver contained therein also fails.

## II.    **RELEVANT BACKGROUND**

### A.    **Flowers' direct-store-delivery business and Distributors' role within that business.**

Flowers generates billions in revenue each year operating the second largest baking company in the US with 85% of its revenue flowing through its "Direct Store Delivery" ("DSD") segment. *See* Declaration of Shaun Markley ("Markley Dec."), ¶ 2, Ex. A (Investor Fact Sheet); and *see* Markley Dec., ¶ 3, Ex. B (Flowers Foods, Inc. Form 10-K fiscal year ended December 31, 2022 ["FLO 10-K"]). "[S]everal large customers" like Walmart account for the bulk of Flowers revenues. FLO 10-K at p. 18.

To fulfil customer orders, Flowers operates dozens of bakeries from coast to coast to carry out a "reciprocal baking" system where various bakeries bake different products for the customers within their market as well as other markets throughout the country. *See* Markley Dec., Ex. A (Investor Fact Sheet) (reflecting locations of bakeries on a map); and July 9, 2024 Declaration of Robert Stewart ("July Stewart Dec."), ¶¶ 8-9; and *see* FLO 10-K at p. 22 ("We operate 46 bakeries across the continental U.S."). Stated otherwise, "[t]he DSD distribution system involves aggregating order levels and delivering products from bakeries to independent distributors for sale and <u>direct delivery</u> to customer stores." FLO 10-K at p. 8 (emphasis added). Flowers' ultimate

3 – Plaintiff's Opposition to Defendants' Motion to Compel Individual Arbitration, Strike Class and Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

goal is to "deliver [fresh bakery] products directly to customers immediately after production. . . ." Declaration of Chuck Rich ("Rich Dec."), ¶ 7; July Steward Dec., ¶ 13 (goods are perishable).

The large majority of products delivered to Flowers' Oregon customers are baked out of state. *See* May 28, 2024 Declaration of Robert Stewart, Dkt. 28 ("May Steward Dec."), ¶ 13. Indeed, only some subsets of the Dave's Killer Bread brand are baked in Oregon with the remainder coming from out-of-state plants. *See* July Steward Dec., ¶¶ 10-11, Ex. 1. The remaining products like Wonder Bread and Tastykake all come from out of state bakeries in states like Utah, California, Washington, and Texas. *Id.*

FBC Portland is registered with the US Department of Transportation as a motor carrier. *See* Markley Dec., ¶ 4, Ex. C (DOT Company Snapshot). It registered as an active "Interstate" private carrier of "BAKERY PRODUCTS." *Id.[3]*

As part of its DSD business, Flowers engages "Distributors" like named Plaintiff to service local territories of blue-chip retail outlets in need of various baked goods like bread, buns, tortillas, and cakes. *See* May Stewart Dec., Ex. 1, Dkt. 28-1, ("Distributor Agreement") at § 5.1 and at Ex. A (reflecting Plaintiff's "Territory"); FLO 10-K at p. 4. Per Flowers internal documents, "[t]he primary purpose of [Distributors] is to deliver bread products for us to **our** customers. . . . the [Distributor's] sole operating function is to delivery Flowers products." *See* Markley Dec., ¶ 5, Ex. D (Flowers' Interoffice Memorandum re: VIE Analysis for Incorporate Entities), 4. While Flowers Distributor Agreement and its Motion try to spin companies like Walmart and Costco as the

---

[3] The DOT provides a "SAFER Help" page that explains the data field categories (i.e. "private (property)", "Interstate." *See* https://safer.fmcsa.dot.gov/saferhelp.aspx#Class. The Carrier Operation designation "Interstate" "[i]dentifies the carrier as being engaged in interstate . . . transport activities." *Id.* The Operation Classification "Private (property)" means FBC Denver's "highway transportation activities are incidental to, and in furtherance of, its primary business activity." *Id.*

4 – Plaintiff's Opposition to Defendants' Motion to Compel Individual Arbitration, Strike Class and Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

Distributors' customers, the reality is that these are Flowers customers serviced by Distributors. Distributors do not contract with these large commercial entities; Flowers does.

Flowers has approximately 5,800 territories throughout the US, the bulk of which are operated by Distributors. FLO 10-K, p. 8. Distributors tell Flowers how much product is needed in their territories and then Flowers bakes products pursuant to those orders and delivers the bread to the Distributors' warehouse. May Stewart Dec., ¶ 13. Flowers uses a third-party logistics company to deliver products from its out-of-state bakeries to its local "warehouses" or cargo centers in Bend. *Id.* Flowers has over 600 local warehouses (aka distribution centers) in the US. *See* FLO 10-K at p. 22. Distributors pay Flowers a "fee for warehouse use" that allows them access to the cargo areas each day. *See* Distributor Agreement, § 11.1.

While Flowers structures its Distributor Agreement as a contract between two businesses, these are not the only parties bound by the agreement. In one section, the agreement facially disclaims any requirement for required business entity to have any specific individual perform any work, but the "Personal Guarantee" belies that disclaimer by requiring a natural individual like Plaintiff to "irrevocably and unconditionally guarantee to [Flowers] . . . for the performance and compliance with the terms, conditions and obligations of th[e] Distributor Agreement. . . ." *Id.* at Ex. F. The Distributor Agreement also requires that the "Owner" (Porteous) form a corporation and keep it in good standing while ensuring that the obligations of the agreement are met. Distributor Agreement, § 2.10. Further still, for the Arbitration Agreement attachment to the Distributor Agreement, the Owner (here, Porteous) signs the document in his personal capacity and as a representative of the business he had to form to enter the hiring contract. *Id.* at Ex. K ("Arbitration Agreement").

Plaintiff's assigned warehouse is in Bend, Oregon. May Steward Dec., ¶ 13. Plaintiff worked full-time to deliver Flowers' products to Flowers' customers in Bend from 2016 to 2021. *See* Complaint, ¶ 13. He spent between 40 and 50 hours per week driving products from Flowers' warehouse to his retail locations and additional hours rotating and stocking products on non-delivery days. Declaration of Clint Porteous ("Porteous Dec."), ¶ 7. Plaintiff and other Distributors arrive at their warehouses within a few hours after the out-of-state products are delivered to their warehouse and unloaded for them. *Id.* at ¶ 4-5. They sign off on their orders, load their products from the warehouse onto their trucks, and begin delivering to the customers in their territory. *Id.*

**B.     This is an employment lawsuit challenging Flowers' misclassification of its Distributors as "independent contractors" and not employees.**

Plaintiff contends that, despite the "independent contractor" label Flowers uses in its hiring agreement, he is an employee under federal and Oregon law. *See* Complaint, Dkt 1. At this pleadings stage, it is adequately alleged that there is an employment relationship and not an "independent contractor" or "commercial" relationship. See *Id.* Flowers has not contested the adequacy of these pleadings in any way (even though it denies liability).

**C.     Flowers is frequently found liable as an employer of its Distributors as will be the case here.**

Flowers is a serial violator of state and federal employment laws that has been repeatedly found liable for misclassifying its core Distributor workforce as "independent contractors" and not employees. Courts routinely make this finding. *See*, *e.g.*, *Goro v. Flowers Foods, Inc*., 2021 WL 4295294, at *14 (S.D. Cal. Sept. 21, 2021) (granting a Distributor's motion for summary judgment and finding that Flowers could not meet its burden to demonstrate disputed material facts that Flowers is an employer under California law); *Herrera v. Flowers Baking Co. of Modesto, LLC*,

6 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings                    NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

2024 WL 2722861, at *5 (E.D. Cal. May 28, 2024) (same).

The US Department of Labor has also made this determination under the FLSA. *See* Markley Dec., ¶ 6, Ex. E (Department of Labor Wage Per Hour Division determination the Flowers is an employer under the FLSA economic realities test). Further still, when faced with misclassification lawsuits in the past, Flowers routinely reclassified its distributors to recognize them as W2 employees under injunctive relief orders. Markley Dec., ¶ 7, Ex. F (*Noll* Motion) at pp. 11-12, Ex. G (*Ludlow* Order) at ¶ 2 ("Flowers will be completely discontinuing its independent distributor program in California. . . .").

In determining that Distributors are employees and not independent contractors, the decisions above look past Flowers carefully crafted Distributor Agreement's labels and disclaimers and instead focus on the reality of its business model. The FLSA and Oregon law do the same. Oregon's minimum wage and overtime laws, codified at ORS Ch. 653, including the threshold question of who qualifies as an "employee" are modeled after the FLSA's economic reality test. *See*, *e.g.*, *Dinicola v. State, Dept. of Revenue*, 246 Or.App. 526, 544 (Or. Ct. App. 2011); *Cortes-Diaz v. DL Reforestation, Inc.*, No. 1:20-CV-00666-CL, 2022 WL 833334, at *4 (D. Or., Mar. 21, 2022). Under these tests, "independent contractor" labels in a hiring agreement carry no weight and, instead, courts look at economic realities in determining whether the worker is truly "independent." *Hollis v. SKC Inv., Inc.*, No. 3:22-CV-00920-HZ, 2023 WL 8935403, at *7 (D. Or. Dec. 26, 2023) ("In determining whether workers are employees or independent contractors, courts look to the economic reality of the working relationship and not the labels used. . . .").[4]

While this case is only at a pleadings stage and Plaintiff has yet to take discovery, many of

---

[4]    Oregon's    Bureau    of    Labor    &    Industries    also    makes    this    clear.    *See* https://www.oregon.gov/boli/employers/Pages/employee-or-independent-contractor.aspx (contractual labels are not determinative).

7 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

the labels and statements Flowers relies on from its Distributor Agreement to distance itself from an employment relation and paint the relationship at issue as "commercial" are false. In the Distributor Agreement and the Motion, Flowers tries to downplay things like its control over the Distributor, whose "customers" the end retailers are, who maintains title and risk of loss over the products as they make their journey to the retail store, and how Distributors are paid.

These statements are demonstrably false. For example, while the Distributor Agreement and Motion frames the retail workers as the Distributors' customers, the reality is these large retail accounts contract with Flowers and Distributors are merely used to service them. Markley Dec., ¶ 8, Ex. H (Flowers 2018 SEC Filing) at p. 9 (Flowers "is the principal, the [distributor] is the agent, and the [retailer] is the customer."). In Flowers' own internal accounting documents, it concedes the "primary purpose of the [distributor] is to deliver bread products for us to our [e.g. Flowers'] customers;" and, Distributors "sole operating function is to deliver Flowers products." Markley Dec., ¶ 5, Ex. D (VIE Memo) at p. 4.

Flowers also retains vast controls under the Distributor Agreement. It uses vague terms like "best efforts" and "good industry practices" to give Flowers broad latitude to define these terms and shape performance. Distributor Agreement, §§ 2.6, 5.1, 14. The Distributor are also bound to follow retail customer standards, another chance to broadly control things like when the Distributor needs to deliver products, frequency of service, and dress codes. *Id.* Flowers also has a progressive disciplinary system under which it can and does "breach" Distributors who fail to live up to its standards; the Distributor faces termination if they do not comply. *Id.* at § 17.

Furthermore, while it claims Distributors take title to the goods and risk of loss when they receive products from the warehouse, its accounting and financial documents say the opposite – that Flowers maintains title and risk until the retail customer takes possession. Markley Dec., ¶ 8,

8 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

Ex. H (Flowers' 2018 SEC Filing) at p. 9 (Flowers maintains inventory risk and "fulfills the contractual obligations for [retail] sales."), and ¶ 9, Ex. I (2011 SEC Filing) at p. F-7 (Flowers passes title and risk when the retail customer takes possession).

Lastly, while Flowers describes a "profit margin" (Motion, 10) to play up the "commercial" nature of the relationship, paying a set percentage of the sales price to someone functions just like a commission paid to a service worker. When Flowers uses honest language in its financial statements, it says distributors earn "a percentage of [Flowers'] wholesale price of product sold to . . . customers" as a "distributor fee." *See* Markley Dec., ¶ 9, Ex. I (Flowers 2011 SEC Filing) at p. F-7.

Courts applying Oregon and federal law often find employment relationships exist despite "independent contractor" labels in similar contracts. FedEx for example used an "Operating Agreement" to classify its delivery drivers as "independent contractors" and facially disclaim control over their work. *See Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1037 (9th Cir. 2014). Despite these labels, under Oregon law, the Ninth Circuit found that these drivers were employees as a matter of law. *Id.* at 1042; and *see e.g. Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 997 (9th Cir. 2014). It is well recognized that "Workers as Business Entities" are just another development in the long line of attempts to misclassify workers and evade employment laws. *See* Anna Deknatel, Lauren Hoff-Downing, <u>ABC on the Books and in the Courts: an Analysis of Recent Independent Contractor and Misclassification Statutes</u>, 18 U. Pa. J. L. & Soc. Change 53 (2015) at III(A), available at Markley Dec., ¶ 12, Ex. L.

## III.    **ARGUMENT**

Despite routinely being held liable as an "employer" and losing on FAA Section 1 issues

9 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

at every level from district courts to the Supreme Court,[5] Flowers asks this Court for a different result. Reaching further into its grab bag of arguments here, it incorrectly argues that there is only a "commercial" relationship at issue such that there is no qualifying Section 1 "contract for employment" of a worker. It also asserts that the class of workers at issue are not qualifying transportation workers who adequately engage in interstate transportation. Flowers concludes with a fallback argument that even if the FAA does not apply, state law saves its arbitration contract. The Court should reject these arguments and deny Flowers' Motion.

Section 1 of the FAA aims to exclude transportation workers' *employment disputes* from its coverage. Where, as here, a natural individual brings employment claims challenging an "independent contractor" label in a hiring agreement, his claims remain outside the FAA's coverage under Supreme Court precedent. Thus, there is a qualifying "contract of employment" of a worker at issue here under the Distributor Agreement and its Arbitration Agreement.

Plaintiff also readily meets the two-part test for being part of a class of workers that engage in interstate commerce under Section 1. As the last-mile delivery drivers of Flowers bakery products, Distributors frequently interact with baked goods traveling interstate; indeed, this is Plaintiff's primary role as Distributor for Flowers and as courts routinely find. This is so even though the class of workers does not cross state lines.

Separately, once the FAA falls away, based on the plain language of the Arbitration Agreement, Oregon law cannot force arbitration of this dispute. The contract says Oregon law

---

[5] *See*, *e.g.*, *Bissonnette v. LePage Bakeries Park St., LLC,* 601 U.S. 246 (2024) (Flowers unsuccessfully argued that only workers for "transportation companies" could be exempt under Section 1 of the FAA); *Canales v. CK Sales Co., LLC*, 67 F.4th 38, 46 (1st Cir. 2023), cert. denied sub nom. *C.K. Sales Co., LLC v. Canales*, 144 S. Ct. 1391 (2024) (affirming that Flowers' Distributors are FAA exempt class of transportation workers under Section 1); *Brock v. Flowers Food, Inc.*, 673 F. Supp. 3d 1180, 1186 (D. Colo. 2023) (same).

10 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

must operate consistently with the FAA which, as noted above, excludes transportation workers from arbitrating employment claims. Furthermore, there are specific requirements under Oregon law if an employer wants to bind an employee to an arbitration provision. Flowers has not addressed these in its Motion nor has it complied with them.

Finally, because the Arbitration Agreement is unenforceable under the FAA and under state law, the class and collective action waiver contained therein is not separately or independently enforceable. The request to strike class and collective claims should be denied.

**A.    Contracts addressing transportation workers' employment disputes are expressly carved out of the FAA.**

In a (rare) unanimous opinion, the Supreme Court held that an arbitration clause in an "independent contractor" agreement is FAA exempt under Section 1 if the individually named plaintiff purses employment claims challenging that classification. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110 (2019). Such is the precisely the case here.

Despite this, Flowers protests that the Court must honor its carefully crafted ruse to avoid paying workers owed wages under state and federal law and must construe its independent contractor agreement, not as a Section 1 contract of employment of a worker, but rather as a "commercial" contract that only binds two business entities. Motion, 17-21. This is an untenable position. *New Prime* addressed what courts must do with employment claims pursued by natural individuals that work under "independent contractor" agreements even if they incorporate and sign the agreement through that entity to secure the job. Flowers' position to the contrary rests on factually and procedurally distinct cases that do not apply here.

*1.*    New Prime *answers the question presented here.*

So called "independent contractors" can pursue employment disputes in court and the FAA

11 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

does not apply to them. *New Prime*, 586 U.S. at 110. In enacting the FAA, Congress intentionally carved out *employment disputes* by transportation workers because other statutes addressed dispute resolution mechanisms for these groups. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120-121 (2001). *New Prime*, 6 U.S. at 110, explains that Congress intends for Section 1 to leave untouched the "alternative employment dispute resolution regimes for many transportation workers."

With this intent in mind, the Supreme Court addressed the precise facts and claims at issue here. After completing training with the trucking company defendant, the plaintiff was encouraged to form an LLC and work as an "independent contractor" which he did. *Oliveira v. New Prime, Inc.*, 141 F. Supp. 3d 125, 128 (D. Mass. 2015), aff'd in part, dismissed in part, 857 F.3d 7 (1st Cir. 2017), aff'd, 586 U.S. 105 (2019). The LLC he created entered the hiring agreements with New Prime and each agreement labeled the LLC an "independent contractor." *Id.* New Prime sought to enforce the arbitration clauses contained in those "independent contractor" agreements when faced with a lawsuit for failing to pay Oliveira minimum wage under federal and state law. *Id.* at 1128-1129.

Against these facts, the Supreme Court took up the meaning of Section 1's "contracts of employment" language. *New Prime*, 586 U.S. at 113. As mentioned above, the decision observes that the transportation worker exemption exists because "Congress had already prescribed alternative employment dispute resolution regimes for many transportation workers" which it did not wish to unsettle by enacting the FAA. *Id.* Even assuming for purposes of resolving the threshold arbitration issue that the plaintiff was a bona fide independent contractor, the Court rejected a narrow interpretation of what "contracts for employment" mean and held that it is not limited to "only agreements between [admitted] employers and employees" or "masters and servants." *Id.* at 114. Rather, "contracts of employment" simply means "an agreement to perform

12 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

work" including those requiring independent contractors to perform the work at issue. *Id.* In this way, Congress intended section 1's carve out to broadly "capture any contract for the performance of work by workers." *Id.* at 115; and *see Canava v. Rail Delivery Serv. Inc.*, 2020 WL 2510648, at *3 (C.D. Cal. Feb. 27, 2020) (recognizing that *New Prime*, "embraces contracts requiring independent contractors to preform work.").

The leading Ninth Circuit case on employment claims pursued by "independent contractors" under Section 1 also supports this interpretation. *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 908 (9th Cir. 2020). There, the "Plaintiffs [in an individual capacity]. . . filed this proposed collective and class action lawsuit alleging that Amazon misclassifies AmFlex users as independent contractors rather than employees." In the lower court briefing on arbitration, each party briefed whether Amazon's independent contractor agreement was a "contract of employment" under Section 1. *See* Request for Judicial Notice; Markley Dec., ¶¶ 10-11, Ex. J (Rittmann's opposition), 21-23 and Ex. K (Amazon's reply), 8-9. After this briefing, the lower court stayed the case pending the resolution of *New Prime* among other cases. *Rittmann*, 971 F.3d at 908 (discussing the stay). Notably, after the *New Prime* stay lifted, Amazon accepted the result in *New Prime* and gave up its challenge on the "contracts of employment" issue. *See Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1199 at fn. 3 (W.D. Wash. 2019), aff'd, 971 F.3d 904 (9th Cir. 2020) (no discussion of this issue). In later cases by individuals pursuing tips against Amazon, Amazon raised other FAA issues, but did not dispute the "contracts of employment" issue. *Miller v. Amazon.com, Inc.*, No. 21-36048, 2023 WL 5665771, at *1 (9th Cir. Sept. 1, 2023), cert. denied, 144 S. Ct. 1402 (2024).

Flowers should have accepted *New Prime's* result like Amazon, but it does not. Under *New Prime*, the Distributor Agreement is a qualifying "contract of employment . . . of a worker" under

13 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

FAA Section 1. Precisely like that case, in his individual capacity, Plaintiff pursues employment remedies asserting he is misclassified even though he formed a business entity, as required, to enter the operative contract of employment (the Distributor Agreement). The Distributor Agreement requires that Plaintiff, as the defined "Owner" and personal guarantor, ensure performance under the agreement. *See* Section II(A). He did so and seeks employment remedies for the periods he personally performed work under the contract. *See id.* and *see* Complaint, ¶ 13.

Furthermore, Plaintiff signs the very agreement that Flowers relies on to send employment claims to arbitration – the Arbitration Agreement. *See* Dkt. 28-1 at Ex. K. He does so in both his capacity as the signatory for the business he formed and in his capacity as the defined, personally responsible "Owner" under the Distributor Agreement. *Id.* Tellingly, this very agreement attempts to send the claims at issue in *New Prime* to arbitration – "claims alleging that [Distributor] was misclassified as an independent contractor." *Id.*

It is impossible to square the result in *New Prime* with Flowers' arguments in this case. *New Prime* excludes from the FAA's reach claims employment disputes pursued by natural individuals challenging independent contractor designations in hiring agreements. Flowers seeks the opposite result.

> 2.      *Flowers' presents distinguishable and non-binding authorities to work around* New Prime*.*

To try to work around Supreme Court precedent on the issue, Flowers primarily relies on non-employment cases pursued by business entities for contract-based remedies that do not challenge the classification of the worker. Flowers' heavily leans on *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024). There, three business entity plaintiffs sued Amazon for contract and fraud-based claims involving their "delivery service partner" (DSP)

14 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

agreements which required them to hire a team of employees to fulfill package deliveries for Amazon. *Fli-Lo Falcon, LLC v. Amazon.com Inc*., 2022 WL 4451273, at *2 (W.D. Wash. Sept. 8, 2022), report and recommendation adopted, 2022 WL 4448654 (W.D. Wash. Sept. 23, 2022), aff'd, 97 F.4th 1190 (9th Cir. 2024). These were not employment disputes or independent contractor misclassification claims pursued by individual plaintiffs. *Id.*

Against this background, *Fli-Lo* answers two questions. First, whether "business entities like plaintiffs" can be a Section 1 "class of workers." 97 F.4th at 1195. The court held that the Amazon DSP entity-plaintiffs were large business entities who are not analogous enough to a class or natural workers that the FAA covers. *Id.* at 1195-1196. This makes sense in light of Congress' well-observed intent to exclude from the FAA only employment disputes by workers.

Second, the court addressed whether a purely commercial contract could qualify as a "contract[] of employment" under Section 1. *Id.* at 1196-1197. It interpreted *New Prime* to mean that this phrase only captures contracts for performance of work by workers and not commercial contracts that do not engage a qualifying worker as a party. *Id.* Other Circuit-level decisions that *Fli-Lo* cites address largely the same facts: a larger business entity like an LLC sues in its capacity as an entity without any involvement of any individual that performed transportation work; there are no employment claims at issue. *See Tillman Transportation, LLC v. MI Bus. Inc*., 95 F.4th 1057, 1063 (6th Cir. 2024) (emphasizing the lack of a natural person as a plaintiff and that the natural person who was party to the agreement at issue who might have been the plaintiff did not do transportation work).

*Amos v. Amazon Logistics, Inc*., 74 F.4th 591, 596 (4th Cir. 2023) is similar. Plaintiff Kirk Delivery employed 450 drivers to service a delivery contract with Amazon. *Amos*, 74 F.4th at 593. It bought contract and tort claims against Amazon. *Id.* Amos, as the owner of Kirk Delivery, also

15 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

pursued employment claims in his individual capacity. *Id.* The court made two holdings with respect to the entity-plaintiff, Kirk Delivery. First, that there was no Section 1 "contract of employment" because "both parties to the Agreement are themselves sizable employers" with Kirk employing a team of 450 employees. *Id.* at 596. Second, that the entity-plaintiff was not a qualifying class of workers as a sizeable corporate entity. *Id.* at 596-597.

As to Amos, individually, the court found no qualifying "contract of employment" between Amos and Amazon. Once again, because the contract was between a sizeable corporate entity that "was not some legal fiction existing only to shield Amazon from unwanted liabilities" or a "nominal party" or "mere window dressing." *Id.* at 597.

These cases do not control the outcome here. As to *Fli-Lo, Tillman,* and the Kirk Distribution aspects of *Amos,* there is no entity-plaintiff here. This is not a business dispute. Plaintiffs' primary employment claims are not "commercial." There is no large business entity with a team of employees at issue. Rather, as in *New Prime,* this is an independent contractor, employment dispute involving a natural individual who personally performed transportation work under the Distributor Agreement for Flowers and served as the "Owner" and personal guarantor under the hiring agreements. Plaintiff only seeks to recover for the work and hours he *personally* worked for Defendants within their direct-store-delivery business. And he signed the operative Arbitration Agreement as the defined "Owner." In short, this case has the exact factual background and claims as *New Prime* and shares zero similarities with the core features of *Fli-Lo* and the related out-of-circuit opinions.

The part of the non-binding *Amos* decision addressing the natural individual is also inapplicable here. This part of the decision is distinguishable because Plaintiff is a signatory in his individual capacity to the relevant Arbitration Agreement. He is also bound to the contract as the

16 – Plaintiff's Opposition to Defendants' Motion to Compel Individual Arbitration, Strike Class and Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

designated Owner and personal guarantor. *Amos* addressed no similar facts. Nor is Plaintiff's corporation "sizeable" and he does not employ scores of employees. He expressly alleges and will prove that the formation of his entity was to shield Flowers from liability. It is mere window dressing to facilitate Flowers' well-documented misclassification scheme. *See* Section II(C). Notably, *Fli-Lo* did not address an individual owner's employment claims so it is not endorsing *Amos*' final point. And this point is inconsistent with *New Prime* which allowed a "non-party" who signed the hiring agreements through an LLC to pursue employment claims even though not classified as an employee under the hiring agreement.

Flowers' additional arguments surrounding its erroneous interpretation of its own contract do not put this case within the *Fli-Lo* rubric. Flowers contends the Distributor Agreement only binds two business entities. Motion, 19. Initially, this is meaningless because *New Prime* also involved an LLC the individual plaintiff formed entering the hiring agreement. More importantly, this is blatantly false. Flowers ignores the Personal Guarantee and the "Owner" obligations under the Distributor Agreement. Further still, it overlooks that Porteous <u>signs the Arbitration Agreement calling for arbitration of misclassification claims in both his individual and business capacity</u>. Indeed, the whole point of this lawsuit is to challenge Flowers' attempt to turn individual employees into business entities as part of its long-running and well-documented scheme to misclassify its delivery workers. To elevate this case to a "commercial dispute"[6] only involving "business entities" is to put the cart before the horse and assume Flowers' carefully crafted Distributor Agreement can convert a worker into a commercial business partner rather than an

---

[6] Notably, Flowers never attempts to define what "commercial dispute" really means, or why an employment contract or employment arrangement cannot *also* be considered "commercial." More notable still, the FAA never uses the phrase "commercial," and this Court should not adopt Flowers' vague and unhelpful reference to said term.

17 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

employee. Many courts and the Department of Labor have rejected this attempt. *See* Section II(C).

Flowers' argument, that it can essentially carve itself out of the FAA by making its agreement look "commercial" in nature also overlooks that the relevant employment tests ignore the "independent contractor" labels in hiring agreements and instead look at the realities of the working relationships. *Id.* Applying these reality focused tests frequently results in a finding of employment status despite the defendant-drafted contract's election to the contrary. *Id.*

If the Court feels it needs to decide who is likely to prevail on the merits of the misclassification issue before reaching the Section 1 analysis, Plaintiff invites the opportunity for discovery and further briefing or a hearing on the issue. *See*, *e.g.*, *Doe v. Swift Transportation Co.*, No. 2:10-CV-00899 JWS, 2017 WL 67521, at *3 (D. Ariz. Jan. 6, 2017) (collecting cases where courts presiding over "independent contractor" cases assessed the merits prior to deciding the Section 1 employment issue).[7]

**B.     The class of Distributors readily meets the two-part *Saxon* test for being engaged in interstate commerce.**

Flowers also takes a misguided stab at another part of the Section 1 exemption by arguing that the class of Distributor workers at issue in this case do not qualify as transportation workers who engage in interstate commerce. Motion, 21-16. Flowers correctly recognizes that *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 456 (2022) governs this inquiry, but it completely fails to apply the straightforward test handed down in that case. Instead, it invites the Court to apply an alternative test that it cobbles together from dated, out-of-circuit precedent which cannot square

---

[7] Plaintiff believes *New Prime* moots the need for such inquiries because it found a qualifying "contract of employment" even when it assumed the "independent contractor" label was accurate. Should the Court read the case differently, Plaintiff wishes to address the merits of the Distributors' status before deciding the Section 1 issue.

18 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

with recent decisions by the Ninth Circuit.

There is a two-part test for determining whether a worker "falls within a 'class of workers engaged in foreign or interstate commerce.'" *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). First, determine the relevant class of workers. *Id.* Second, determine if they are engaged in interstate commerce. *Id.*

Under the first step of *Saxon*, the "class of workers" Plaintiff belongs to depends on what "[he] does at [Flowers], not what [Flowers] does generally." *Saxon,* 596 U.S. at 456 (rejecting an industry-wide approach in favor of the class of workers approach). *Saxon* described the class of workers at issue there as "who physically load and unload cargo on and off airplanes on a frequent basis." *Id.* at 456. In other post-*Saxon* cases against Flowers, courts defined the relevant class of workers as "Flowers 'Distributors' who load and unload bakery products." *Brock v. Flowers Food, Inc.*, 673 F. Supp. 3d 1180, 1186 (D. Colo. 2023).

The same class is at issue here. It is Distributors who personally operated a territory for Flowers who load and unload bakery products. As part of Flowers' DSD business, Distributors primary purpose is to accept of-state bakery products upon their arrival at local cargo centers or warehouses and load them onto trucks used to for delivery at retail locations in their defined geographic territory. *See* Section II(A), *supra*; and *see Saxon*, 142 S. Ct. at 1788-1789. Flowers makes no effort to otherwise define the class of workers at issue.

Applying *Saxon* step two, it is clear Distributors, much like airplane cargo loaders, are directly involved in interstate commerce under section 1 of the FAA. *See* 9 U.S.C. § 1. To begin with, there is no requirement workers themselves "physically accompany freight across state or international boundaries." *Saxon*, 596 U.S. at 460; *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020) (Section 1 "exempts transportation workers who are engaged in the movement

19 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

of goods in interstate commerce, even if they do not cross state lines."). Instead, the question is

whether the workers are "directly involved in" the transportation of goods crossing state borders.

*Saxon*, 596 U.S. at 457 (interpreting what it means to be "engaged in [interstate] commerce"). As

*Rittmann* explains:

> The ordinary meaning of ["engaged in commerce"] does not suggest that a worker
> employed to deliver goods that originate out-of-state to an in-state destination is
> not "engaged in commerce" any less than a worker tasked with delivering goods
> between states.

971 F.3d at 910.

Under this test, *Saxon* found it "too plain to require discussion" that workers who load or

unload goods from a truck or a plane traveling interstate are directly involved in interstate

transportation under the FAA. *Id.* This kind of involvement in the interstate journey of the goods

is, "as a practical matter, part of the interstate transportation of goods." *Id.* at 457.

Likewise, in *Rittmann*, the Ninth Circuit held that last-mile Amazon delivery drivers that

carry out intrastate deliveries nonetheless engage in commerce under Section 1 where the goods

cross state lines in earlier parts of their journeys. *Rittmann,* 971 F.3d at 915-916. The products the

class of Amazon delivery drivers carry "remain in the stream of interstate commerce until they are

delivered." *Id.* Similarly, UPS drivers who conduct local warehouse to customer location,

intrastate, deliveries as part of a broader interstate journey are FAA exempt. *Wynn v. United Parcel

Serv., Inc.*, No. 21-CV-10029-CRB, 2022 WL 18912481, at *5 (N.D. Cal. Oct. 4, 2022) (applying

*Saxon* and *Rittmann*); *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1162 (9th Cir. 2024)

(warehouse worker who unloaded Addidas apparel coming in from other countries was FAA

exempt under *Saxon* and *Rittmann*).

More recently still, the Ninth Circuit found that purely intrastate delivery drivers working

for Domino's Pizza are FAA exempt.  *Carmona Mendoza v. Domino's Pizza, LLC*, 73 F.4th 1135,

20 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

1136 (9th Cir. 2023), cert. denied sub nom. *Domino's Pizza, LLC v. Carmona*, 144 S. Ct. 1391 (2024). In *Carmona*, ingredients used at local Domino's locations were sent to a California warehouse where the relevant class of delivery workers picked them up and delivered them to the Domino's retail locations in need of the product. *Id.* at 1136. Relying on *Rittmann,* the court reasoned that where "goods shipped in interstate commerce were not transformed or altered at the warehouses, the entire journey represented one continuous stream of commerce" bringing these last-mile drivers within the relevant stream of interstate commerce. *Id.* at 1137-1138. The same is true for other food distribution workers performing near-identical jobs to the class of workers at issue here. *Valdez v. Shamrock Foods Co.*, 2023 WL 2624438, at *3 (C.D. Cal. Mar. 16, 2023) (food distributor who drove intrastate leg of a broader interstate journey are "last-mile" FAA exempt workers).

Post-*Saxon* district and appellate courts consistently find that Flowers' Distributors are engaged in interstate commerce given their substantial and frequent involvement with goods moving interstate. *Canales v. CK Sales Co., LLC*, 67 F.4th 38, 46 (1st Cir. 2023), cert. denied sub nom. *C.K. Sales Co., LLC v. Canales*, 144 S. Ct. 1391 (2024) ("Here, plaintiffs frequently deliver goods in trucks to stores. So they are transportation workers. . . ."); *Brock*, 673 F. Supp. 3d at 1189. This Court should do the same.

The same result attaches here. Distributors play a direct and necessary "last-mile" role in Flowers' interstate direct-store-delivery business. *See* Section II(A). Flowers' DSD segment, as the name implies, involves getting its freshly baked, out-of-state products on customers' shelves as quickly as possible. Distributors are an integral, intimately involved part of the DSD process. Distributors' primary or even "sole" purpose is to load products arriving from other states onto their trucks and carry them the final miles of their journey to the intended local retail customers.

21 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

*See* Section II(A). This work is undoubtedly "frequent." These workers receive fresh product 5 days per week, load, and deliver the very out-of-state products that they ordered for the Flowers customers in their territories right after they arrive at local cargo centers from out of state. *Id.*

Further still, Distributors pay a "warehouse fee" for access to the local warehouse or cargo loading and unloading facilities maintained by Flowers. *Id.* That payment permits them access to receive, load, and deliver the bakery products arriving from out of state. *Id.* Like the wharfage agreements discussed in *Saxon*, this arrangement to access and load from an interstate cargo facility makes Distributors intimately involved as a central part of the interstate shipment.

The fact FBC Portland is also a registered "interstate" motor carrier of bakery products with the UD DOT further confirms the interstate nature of the work involved in this case. *See* Section II(A). Thus, "as a practical matter, [the Distributors' loading and delivery of out-of-state goods is] part of the interstate transportation of goods" just like airport cargo loaders, last-mile Amazon workers, and last-mile Domino's truck drivers.

The Court should, like other post-*Saxon* courts in this Circuit, reject Flowers' invitation to alter or add additional inquiries to *Saxon's* two-step test.

Despite citing *Saxon* at the outset of its analysis, Flowers brushes it aside and instead asks the Court to follow dated and/or out-of-circuit authorities which are not compatible with *Saxon, Rittmann,* and *Cardona*. **First**, Flowers argues that the Court must assess the class of workers' responsibilities and argues that customer-facing responsibilities somehow undercut status as a transportation worker. Motion, 21-22. This is incorrect. *Saxon* held that the transportation-involved part of the job such as loading and unloading cargo from airplanes need only be "frequent." If a ramp supervisor, like Saxon, fills in as ramp agents up to three shifts per week, the involvement with interstate transportation is sufficiently frequency. *Id.* at 456. Thus, even supervisors who

spend several (likely a majority) of their shifts doing activities other than physical loading and unloading are sufficiently engaged in interstate commerce. *Id.* These supervisors would fail the test as Flowers frames it because of their other, primary and supervisory duties, but the Supreme Court found these workers Section 1 exempt.

Most of the cases Flowers cites to avoid the relevant, recent Ninth Circuit authorities addressing this issue, like *Hill* and *Veliz*, are very dated and do not control here. The only recent or post-*Saxon* authority Flowers cites is *Lopez v. Cintas Corp.*, 47 F.4th 428 (5th Cir. 2022), but *Lopez* is contrary to Ninth Circuit precedent. Motion, 21-22. *Lopez* rejects the notion that last-mile delivery drivers are engaged in interstate commerce for Section 1 purposes, but in so doing, it becomes incompatible with *Rittman*. *Lopez*, 47 F.4th at 432 (noting circuit split and declining to follow *Rittman*). The Ninth Circuit expressly recognizes this dichotomy, yet Flowers asks this Court to follow the out-of-circuit and rejected *Lopez* line of reasoning. *See Carmona*, 73 F.4th at 1137 at fn. 1 (recognizing the split between the Ninth Circuit in *Rittman* and the Fifth Circuit in *Lopez*).

**Second**, Flowers asserts that if the class of workers only works within a single state, they are not engaged in commerce for Section 1 purposes. Motion, 23-26. This is a frivolous argument. The Supreme Court and the Ninth Circuit make clear the workers themselves need not cross state lines so long as they are involved in a part of a broader, interstate journey. *Saxon*, 596 U.S. at 460; *Rittmann*, 971 F.3d at 915.

Flowers attempts to distinguish *Rittmann* by claiming that the products here "come to rest" and a new transaction starts once the Distributors take possession of the bakery products at their local warehouse and before the last-mile journey to the retail customers' shelves. Motion, 25-26. A review of the line drawing by *Rittmann* and other circuit courts addressing the Section 1 issue

23 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

puts Flowers' argument to rest. In teasing out when transportation work is sufficiently connected to the flow of interstate commerce, *Rittmann* distinguished the last-mile package delivery at issue there from cases like *Schechter Poultry*. That case involved interstate shipping of live chickens to slaughterhouses where they were slaughtered, processed, and sold downstream to local butchers who would sell to end-customers. *Rittmann*, 971 F.3d at 916 (*citing A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495 (1935)). The court found facts like these distinct from Amazon's process where "a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys" which is precisely what occurs here. *Id. Carmona* holds the same. Because the products were not altered when they arrived at the California warehouse for further delivery to Domino's retail locations, there was only a single, interstate journey that the intrastate, last-mile drivers were a part of. *Carmona*, 73 F.4th at 1138.

This case is controlled by these two leading Ninth Circuit authorities. The same bakery products destined for retail shelves in the Distributors' territories arrive at a local warehouse where they are unaltered and picked up for last-mile delivery. There is only a change in the transportation vehicle at the local warehouses; there is no change to the product (e.g. there is no baking of the bread nor do Distributors turn the bread into a sandwich or other good that is resold).

Flowers further tries to avoid the factually analogous cases by citing to inapt factual circumstances involving gig economy workers. First, there are cases addressing food delivery drivers like *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020), where the class of workers delivers locally prepared meals that have ingredients which originated out-of-state. That court held that "the workers must be connected not simply to the goods [that may have, at some point, moved interstate], but to the act of moving those goods across state or national borders." *Wallace*, 970 F.3d at 802. The expansive and incorrect interpretation of Section 1 pushed

24 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

by the workers there would result in things like Section 1 excluding from the FAA "ice cream truck drivers selling treats made with milk from an out-of-state dairy." *Id.*; and *see e.g. Immediato v. Postmates, Inc.,* 54 F.4th 67, 74-77 (1st Cir. 2022) (deliveries from local retail stores to customers are too disconnected from the prior interstate journey of the goods from the manufacturer to the retailer). These decisions square with *Rittmann* and *Carmona* which based their decisions, in part, on the unaltered nature of the goods at issue, keeping the stream of commerce intact through delivery to a final retail destination.

Next, there are cases addressing ride-share services like those offered by Uber or Lyft. *See Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863-86 (9th Cir. 2021). In these cases, courts recognize that the very small percent of services provided by the drivers that occur between states or that are connected to an interstate journey (i.e. rides from airports or other terminals) do not transform otherwise, predominantly local, drivers into Section 1 exempt interstate transportation workers. Especially so where Uber and Lyft drivers do not coordinate or otherwise intertwine themselves with the interstate journey such that they are a part of it. *See*, *e.g.*, *Cunningham v. Lyft, Inc.,* 17 F.4th at 251 ("The airlines do not agree to provide the relevant ground transit, and based on the record before us, neither Lyft nor Lyft drivers contract with the airlines to help the airlines perform such an undertaking."); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 864 (9th Cir. 2021) (Uber drivers work "predominantly entails intrastate trips, even though some Uber drivers undoubtedly cross state lines in the course of their work and rideshare companies do contract with airports to allow Uber drivers to pick up arriving passengers." (cleaned up)). To put it in *Saxon* terms, the interstate work is not sufficiently "frequent."

All the cases Flowers relies on to try to avoid *Rittmann* and *Carmona's* plain application

25 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

to the facts of this case are careful to draw appropriate lines to delineate whether a worker is engaged in the flow of interstate commerce or not. Each of these cases recognizes there are situations analogous to Amazon where the driver carries out an intrastate leg closely related in time to a broader interstate journey such that it is a practical part of it. On the other hand, there are situations where the delivery is from a local retail store or restaurant which brought an end the base ingredients' interstate journey (e.g. Grubhub or Postmates) or where the scant involvement of interstate trips renders the work too attenuated from interstate commerce (like Uber and Lyft). *See*, *e.g.*, *Immediato v. Postmates, Inc.*, 54 F.4th at 74-77; *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 557-559 (3d Cir. 2023), *as amended* (May 4, 2023), *cert. denied*, 144 S. Ct. 566 (2024).

In short, as other courts frequently recognize, Flowers Distributors function much like last-mile Amazon or Domino's delivery drivers when they receive fresh product to be immediately delivered to local retail stores in an unaltered fashion. They have little in common with ride-share drivers who rarely interact with anyone moving interstate. Nor do they pick up goods that have already come to rest in local retail stores or restaurants which are then altered and sent out for local, one-off deliveries.

### C.    Flowers cannot use Oregon law to enforce any arbitration obligations in light of the plain language of its agreement.

Flowers makes a state law fallback argument contending that, even if the FAA does not apply, Oregon law compels arbitration of the claims at issue. This is wrong for two reasons. Motion, 26-27.

First, Flowers state law fallback argument completely ignores the plain language of its Arbitration Agreement. Since arbitration is simply a matter of contract, the Court must look at what the agreement says regarding arbitration and Oregon law. *Morgan v. Sundance, Inc.*, 596

26 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496

U.S. 411, 418 (2022) ("a court must hold a party to its arbitration contract just as the court would to any other kind."). The Arbitration Agreement begins by stating that disputes between the parties "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ("FAA"). . . ." Arbitration Agreement at p. 1 (Dkt. 28-1 at 40/42). Towards the end of the agreement, it further states that the agreement "shall be governed by the FAA and Oregon law to the extent Oregon law is not inconsistent with the FAA." *Id.* at p. 3 (Dkt. 28-1 at 42/42). If the FAA does not apply to transportation workers, neither can Oregon arbitration law under this plain language. *Brock* found exactly this under the identical language at issue there calling for the application of Colorado law if it is not inconsistent with the FAA. *Brock*, 673 F.Supp.3d at 1189-1190. Despite Flowers' loss on this issue in other matters, it makes no effort to address the plain language of its own contract.

Second, Flowers cites no Oregon law supporting arbitration agreements. Presumably, Flowers moves under Or. Rev. Stat. Ann. § 36.620(1) which supports the validity of contracts agreeing to resolve disputes by way of arbitration. However, subsections (5) and (6) state that agreements to arbitrate "may not be enforced by a court unless" two conditions are met. First, there must be a written employment offer with a notice that there is a requirement to sign an arbitration agreement as a condition of the offered employment. Or. Rev. Stat. Ann. § 36.620(5)(a). This acknowledgement must contain specific language to be effective. *Id.* at subsection (6).[8] Flowers makes no effort to demonstrate it provided a written employment offer to Plaintiff, let alone that

---

[8] This statute is preempted by the FAA where it applies. *Ackerman v. Bridgetown Nat. Foods LLC*, No. 3:23-CV-1012-JR, 2024 WL 421000, at *4 (D. Or. Jan. 19, 2024), report and recommendation adopted, No. 3:23-CV-01012-JR, 2024 WL 418117 (D. Or. Feb. 5, 2024). But if there is no FAA application, there is naturally no preemption.

it used the required language. Thus, there is no valid agreement for the court to enforce under state law.

**D.      The vague motion to strike should be denied.**

Flowers' motion to strike class and collective claims is a bit hard to follow. Motion, 15-16. On the one hand, it appears to argue that, if arbitration is compelled under the Arbitration Agreement, then the Arbitration Agreement's class and collective claim waiver make such claims improper in arbitration. Motion, 15. Plaintiff acknowledges that, if there is a valid agreement to arbitrate, under Epic Systems, the arbitration would be on an individual basis only. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 525 (2018). However, Flowers then goes on to argue that "[i]n all events" these claims should be stricken which suggests that, even if the Arbitration Agreement is invalid, the class/collective waiver section would somehow survive and compel this litigation to go forward on an individual basis only. Flowers cites one district court opinion which upheld a "stand alone" class action waiver, but that does not assist Flowers who only has such a waiver in its Arbitration Agreement, not in a standalone contract or other provision. Motion, 16 (citing *Jeong v. Nexo Cap. Inc.*, 2022 WL 3590329, at *16 (N.D. Cal. Aug. 22, 2022)).

To the extent Flowers argues that, even if the Arbitration Agreement is invalid, it can strike class and collective claims, this is unsupported by any on-point case law. If there is no valid agreement to arbitrate, then there is no agreement to waive class and collective claims contained within that purported agreement.

**IV.     <u>CONCLUSION</u>**

The Court should deny the Motion in its entirety. Employment claims pursued by those performing work under an "independent contractor" agreement satisfy Section 1's "contracts of employment." The class of Distributors is also engaged in interstate commerce just as much as

Amazon and Domino's last-mile drivers and are thus, Section 1 transportation workers. The FAA cannot compel arbitration here.

Based on the plain language of the Arbitration Agreement, state law cannot accomplish what the FAA would not and is not a basis to compel arbitration here. Nor has Flowers complied with Oregon law regarding how to create an enforceable arbitration provision in an employment context.

Respectfully submitted:
Dated:  July 11, 2024

**NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Shaun Markley*
Craig M. Nicholas (CA SBN 178444)*
Shaun Markley (CA SBN 291785)*
Jordan Belcastro (CA SBN 339570)*
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

*Pro Hac Vice*

**LEIMAN LAW, P.C.**
Alan J. Leiman (OR SBN 980746)
P.O. Box 5383
Eugene, Oregon 97405
Tel: (541) 345-2376
Email: alan@leimanlaw.com

Attorneys for Plaintiff,
CLINT PORTEOUS

29 – Plaintiff's Opposition to Defendants' Motion to
Compel Individual Arbitration, Strike Class and
Collective Allegations, and Stay the Proceedings

NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Fl., San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496