ELIZABETH A. FALCONE (OSB No. 111694)
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone: 503-552-2140
Facsimile: 503-224-4518

JARED L. PALMER (CA SBN 287974), *pro hac vice*
jared.palmer@ogletree.com
ETHAN LAI (CA SBN 347130), *pro hac vice*
ethan.lai@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

Attorneys for Defendants
FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and
FLOWERS BAKING CO. OF PORTLAND, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

CLINT PORTEOUS, individually and on behalf of others similarly-situated,

Plaintiff,

v.

FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; AND FLOWERS BAKING CO. OF PORTLAND, LLC, an Oregon limited liability company,

Defendants.

**Case No.: 6:23-cv-01840-AA**

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS AND COLLECTIVE ALLEGATIONS, AND STAY THE PROCEEDINGS**

**REQUEST FOR ORAL ARGUMENT**

1 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS AND COLLECTIVE ALLEGATIONS, AND STAY THE PROCEEDINGS

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

# I. INTRODUCTION

The Distributor Agreement between Defendant Flowers Baking Co. of Portland, LLC, and Plaintiff's business, CPORT Distributing Inc., provides for arbitration of disputes "having any relationship or connection whatsoever with the Distributor Agreement." Dkt. 28-1 at p. 40. Plaintiff does not dispute that that Arbitration Agreement covers his claims. Nevertheless, he insists that arbitration is unavailable under *either* the Federal Arbitration Act ("FAA") or Oregon law. Plaintiff is wrong on both scores. And in all events, he cannot proceed on a class or collective basis.

On the FAA, Plaintiff's sole argument is that § 1's transportation worker exemption precludes federal arbitration. That exemption does not apply for three independent reasons. *First*, the Distributor Agreement is a "commercial contract between two business entities," not a "contract of employment." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F. 4th 1190, 1197 (9th Cir. 2024). *Second*, Plaintiff belongs to a class of franchise business owners who need not transport goods personally. *Third*, Plaintiff's business executes distinct, *intrastate* transactions for purposes of § 1.

Even if the FAA did not apply, however, the Arbitration Agreement is independently enforceable under Oregon law. The Agreement provides that it "shall be governed by the FAA and Oregon law to the extent Oregon law is not inconsistent with the FAA." Dkt. 28-1 at p. 42. As a result, Oregon law "controls" to the extent that "the FAA does not apply." *Noorzai v. Dabella Exteriors, LLC*, No. 3:15-CV-00045-PK, 2015 WL 5037669, at *4 (D. Or. Aug. 25, 2015). And Plaintiff's arguments against enforcement under Oregon law are meritless.

Finally, both parties "explicitly waive[d] any right to … initiate or maintain any covered claim on a class, collective, representative, or multi-plaintiff basis *either in court or arbitration*."

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

Dkt. 28-1 at p. 40 (emphasis added). Accordingly, Plaintiff's class and collective allegations must be stricken regardless the disposition of Flowers' motion to compel.

## II. ARGUMENT

### A. The Court Should Compel Arbitration Under The FAA Because § 1 Does Not Apply.

Section 1 provides that the FAA does not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Distributor Agreement is not a "contract[] of employment"; franchise business owners like Plaintiff are not "engaged" in transportation work; and any transportation Plaintiff does perform is exclusively intrastate. For any and all of these reasons, § 1 does not apply and the Arbitration Agreement is enforceable under the FAA.

#### 1. The Distributor Agreement Is a Commercial Contract Between Two Businesses, Not a "Contract of Employment."

Section 1 applies only to arbitration agreements contained in "contracts of employment of . . . workers." 9 U.S.C. § 1. The Ninth Circuit recently held that this exemption does not "apply to a commercial contract between two business entities." *Fli-Lo Falcon*, 97 F. 4th at 1197; *see also, e.g.*, *Amos v. Amazon Logistics, Inc.*, 74 F. 4th 591, 596 (4th Cir. 2023) (holding that § 1 does not "extend … to contracts between business entities"); *Tillman Transp., LLC v. MI Bus. Inc.*, 95 F. 4th 1057, 1064 (6th Cir. 2024) (agreeing that "a commercial contract between two business entities is not a contract of employment").

That holding dictates the outcome here, because the Distributor Agreement is a "commercial contract between two business entities." *Fli-Lo Falcon*, 97 F.4th at 1197. The Agreement begins by stating that it exists exclusively "between Flowers Baking Co. of Portland, LLC, with its office and principal place of business at 14128 Ne Airport Way, Portland, OR. 97230

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

('COMPANY'), [and] CPORT Distributing Inc, a[n] Oregon corporation, with its principle place of business at 408 NW Hill St, Bend, OR 97703 ('DISTRIBUTOR')." Dkt. 28-1 at p. 3. It concludes with signature blocks that provide space only for the "Distributor" and the "Company." *Id.* at p. 24. In between, the Agreement requires the Distributor to ensure at all times that its "corporate registration is in good standing and in compliance with appropriate state law." *Id.* at p. 5. And it calls for the Distributor to provide business services to Flowers in exchange for valuable consideration. *See, e.g.*, *id.* at p. 4 (explaining that the Distributor "purchased" the right to "sell and distribute Products" within a defined territory); *id.* at p. 6 (requiring the Distributor to use its "commercially reasonable best efforts to develop and maximize the sale of Products to Outlets within the Territory"); *see also Amos*, 74 F. 4th at 596 (describing a commercial contract as one that "provides … for certain business services to be provided by one business to another").

Plaintiff's attempts to drive a wedge between *Fli-Lo Falcon*'s clear holding and its straightforward application to this case fall flat.

*First*, Plaintiff claims that *New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019), effectively held that commercial agreements can qualify as "contracts of employment" under § 1. *See* Dkt. 31 ("Opp.") at pp. 11–13. *Fli-Lo Falcon*, however, rejected that very argument, explaining that *New Prime* did not "answer[] the question[]" whether "a commercial contract between two business entities" can "qualify as a 'contract of employment.'" 97 F. 4th at 1195. The Sixth Circuit said the same thing in *Tillman*. 95 F. 4th at 1064 ("[T]he *New Prime* Court did not address whether corporate entities may be covered under Section 1."). For good reason: *New Prime* addressed whether "the term 'contracts of employment' refer[s] only to contracts between employers and employees, or" whether "it also reach[es] contracts with independent contractors." 586 U.S. at 108. The Court never considered whether the exemption *also* applies to contracts

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

between two business entities. *Id.* at 113. Although the contract in that case involved business entities, the parties litigated it on the stipulated assumption that the contract was "between Oliveira[, a natural person,] and Prime," the defendant company. *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 17 (1st Cir. 2017). As a result, the question presented in *New Prime* was limited to "whether *an agreement between a trucking company and an individual transportation worker* cannot be a 'contract of employment' within the meaning of § 1 if the agreement establishes or purports to establish an independent-contractor relationship." *Id.* (emphasis added). *New Prime* answered that question by holding that "agreements that require independent contractors to perform work" are "contracts of employment" under § 1. 586 U.S. at 114. It said nothing about whether commercial agreements also qualify—the question the Ninth Circuit resolved in *Fli-Lo Falcon*.

*Second*, Plaintiff insists that *Rittmann v. Amazon.com*, 971 F.3d 904 (9th Cir. 2020), supports his interpretation of *New Prime*. *See* Opp. at p. 13. *Fli-Lo Falcon* rejected that argument, too, holding that "*Rittmann* says nothing about whether a business entity can be a 'worker' subject to a 'contract of employment' under the transportation worker exemption." 97 F. 4th at 1197. The plaintiffs in *Rittmann*—all natural persons—were "parties to individual contracts" that had labeled them "independent contractors." *Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1198 (W.D. Wash. 2019). Prior to the Supreme Court's decision in *New Prime*, the parties had "disputed whether [the] [p]laintiffs were subject to a 'contract of employment'" given their independent contractor status. *Id.* at 1199 n.3. After *New Prime*, the parties agreed that independent contractors can be "subject to a contract of employment." *Id.* As a result, the Ninth Circuit never considered or decided that issue—much less on whether a contract between two business entities can qualify as a contract of employment.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

*Third*, Plaintiff attempts to distinguish *Fli-Lo Falcon* on the ground that that case involved corporate plaintiffs pursuing contract and fraud claims, as opposed to individual plaintiffs pursuing employment-related claims. *See* Opp. at pp. 14–18. But *Fli-Lo Falcon*'s holding is not so limited. *Fli-Lo Falcon* squarely held that "'contracts of employment' in the transportation worker exemption do not extend to commercial contracts." 97 F. 4th at 1196; *see also id.* at 1197 ("agree[ing]" that § 1 "does not" apply "to a commercial contract between two business entities"). In so doing, the court explained what it means "for a contract to *be* a contract of employment covered by § 1": "a *qualifying worker*" must be "one of the *parties*." *Id.* at 1196–97 (third emphasis added). Because the parties to the agreements at issue in *Fli-Lo Falcon* were two business entities, the Ninth Circuit held that § 1 did not apply—regardless the identity of the plaintiff or the nature of claims. *See id.* at 1197 ("Amazon chose to contract only with business entities . . . [a]nd those contracts are not subject to the [§ 1] exemption."). Just so here.

Plaintiff's effort to cabin *Fli-Lo Falcon* to corporate plaintiffs and corporate claims also conflicts with § 1's text. Section 1 does not mention plaintiffs or claims. It applies to categories of "*contracts*." 9 U.S.C. § 1 (emphasis added). Accordingly, the relevant question under § 1 is whether the contract in question is covered by § 1—not whether any particular kind of plaintiff is bringing any particular kind of claim. *Fli-Lo Falcon*'s holding that Amazon's "*contracts* [were] not subject to the transportation worker exemption" because "'*contracts* of employment' . . . do not extend to commercial contracts" tracks § 1's text precisely. 97 F. 4th at 1196-97. Plaintiff's reading, by contrast, has no textual basis.

Plaintiff's interpretation also defies common sense, as it would allow delivery drivers employed by corporations—such as DHL or FedEx—to bring employment-related claims against the companies purchasing shipping services. Articulating this logic, the Fourth Circuit in *Amos*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

squarely rejected the plaintiff- and claim-based distinctions for which Plaintiff advocates. That case involved an agreement between Amazon and a company called Kirk Delivery in which Kirk Delivery—"a single-member North Carolina limited liability company owned and managed by [Ahaji] Amos"—agreed to serve as one of Amazon's delivery service partners. *Amos v. Amazon Logistics, Inc.*, No. 1:22-CV-55, 2022 WL 2181448, at *1 (M.D.N.C. June 16, 2022). After Amazon terminated the agreement, Kirk Delivery and Ms. Amos brought "tort, contract, and employment claims" against Amazon in federal court. 74 F.4th at 593. Amazon moved to compel arbitration, and the Fourth Circuit held that the FAA's transportation worker exemption did not apply. *Id.* It did so even though Ms. Amos was a named plaintiff, even though she raised employment claims, and even though she had signed the agreement on her company's behalf. *See Amos*, 2022 WL 2181448, at *2. Section 1, the court reasoned, "applies to contracts entered into *with* transportation workers," not contracts between business entities. 74 F.4th at 597. And Ms. "Amos herself [was] not a named party to the Agreement between her business—Kirk Delivery—and Amazon." *Id.* at 593; *see id.* at 597 ("[P]laintiff Amos is not a party to the Agreement[.]"). Accordingly, § 1 did not apply to the employment claims brought by Amos any more than it applied to the contract claims brought by Kirk Delivery. *See id.* at 596–97.

*Fourth*, Plaintiff suggests that the Distributor Agreement is not actually an agreement between two business entities because he agreed to be personally bound by the Arbitration Agreement contained therein. *See* Opp. at p. 17. The fact that Plaintiff agreed to arbitrate claims brought in his personal capacity does not transform the Distributor Agreement into a "contract of employment" between a business and an individual worker. *See Amos*, 74 F.4th at 596–97 (holding that agreement between businesses was not a contract of employment even though the individual business owner was bound to arbitrate under that agreement). A contract of employment typically

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

"promise[s] work and compensation to an individual employee" or other worker and outlines "provisions regarding salary, benefits, and leave time." *Id.* at 596. The Distributor Agreement does none of those things—in fact, it expressly disclaims any requirement that the distributor's duties "be conducted personally, or by any specific individual." Dkt. 28-1 at p. 16. The Arbitration Agreement that binds Plaintiff simply prevents his business from evading its agreement to arbitrate by disregarding corporate formalities. *Id.* at p. 40 (explaining that the Agreement covers any claim that Distributor—including its owner—may have against Company arising from the Distributor Agreement).[1]

*Finally*, Plaintiff complains that Flowers should not be permitted to evade the transportation worker exemption via an artfully crafted contract when the "whole point" of his lawsuit is to "challenge Flowers' attempt to turn individual employees into business entities." Opp. at p. 17. Again, *Fli-Lo Falcon* rejected that argument. The plaintiffs there complained that Amazon was "circumventing" the FAA by "requiring them to become business entities to become" delivery service partners when their businesses were "utterly dominated by Amazon." 97 F. 4th at 1197–98. The Ninth Circuit recognized, however, that Amazon had made a conscious choice "to contract only with business entities," and no law "barred [it] from doing so." *Id.* at 1197. Indeed, no "cases hold that contracting parties are forbidden by the FAA to structure their contracts to avoid the transportation worker exemption by taking those contracts out of the coverage of the

[1] For the same reasons, Plaintiff's argument regarding the Personal Guaranty falls flat. *See* Opp. at p. 17. The fact that he signed a Personal Guaranty does not transform an agreement between two businesses into a contract of employment. Nor does it require Plaintiff to perform any work personally. Dkt. 28-1 at p. 16 (explaining that the Distributor Agreement does not require the Distributor's duties to "be conducted personally"). Indeed, the Personal Guaranty itself *confirms* that the Agreement was "entered into by and between CPORT DISTRIBUTING INC (Corporation Name), a[n] Oregon corporation ('Distributor'), and COMPANY," not between Plaintiff and Defendants. *Id.* at p. 35.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

exemption." *Id.* at 1198; *see also id.* at 1202 (H.A. Thomas, J., concurring in the judgment) (explaining that the Court had "reject[ed] plaintiffs' concern" that its broad holding "would allow companies to contract around the FAA's exemption by forcing their transportation workers to create sham corporations, then contracting with those corporations rather than employing the workers directly"). Plaintiff may not like the Distributor Agreement, but he executed it on his company's behalf. Because that Agreement is "a commercial contract between two business entities," § 1 does not apply. *Id.* at 1197.[2]

**2. Franchise Business Owners Like Plaintiff Are Not Transportation Workers.**

Even if the Distributor Agreement were a "contract of employment," § 1 "exempts from the FAA only contracts of employment of *transportation workers*." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (emphasis added). To determine whether a plaintiff is a

[2] Plaintiff requests "the opportunity for discovery" in the event this Court "needs to decide who is likely to prevail on the merits of" his argument that Flowers misclassified him as an independent contractor rather than an employee "before reaching the Section 1 analysis." Opp. at p. 18. That merits question is not at issue here. Plaintiff's employment "status matters not when the claimed FAA exemption applies to contracts entered into *with* transportation workers, and the Agreement here is between [CPORT] on the one hand, and [Flowers] on the other." *Amos*, 74 F.4th at 597; *see also Cunningham v. Lyft, Inc.*, 17 F. 4th 244, 249 n.3 (1st Cir. 2021) ("the distinction between employees and independent contractors matters not for the threshold question of the FAA's applicability, regardless of its centrality to the underlying dispute"). In any event, Plaintiff's argument on the merits is demonstrably incorrect. *See* Opp. at pp. 6–7. He claims that courts "routinely" hold Flowers liable for misclassifying its distributors as independent contracts, but the decisions he cites were decided under markedly different California laws. *Id.* In reality, arbitrators and courts have repeatedly *upheld* Defendants' model and others like it as an independent contractor arrangement. *See, e.g.*, Ex. D to Declaration of Jared Palmer (confirming finding of independent contractor status for distributors with various subsidiaries); *Franze v. Bimbo Bakeries USA, Inc.*, 826 Fed. Appx. 74, 76–77 (2d Cir. 2020) (ruling that bakery distributors were independent contractors when they could control the size and scope of their territories through full or partial territory sales, hire others to assist with the work, and select their own delivery times and routes subject to customer requirements); *Carpenter v. Pepperidge Farm, Inc.*, No. 23-2372, 2024 WL 2103257 at *3 (3d Cir. 2024) (similar).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

"transportation worker" for purposes of § 1, courts first "defin[e] the relevant 'class of workers' to which [the plaintiff] belongs" and then evaluate "whether that class of workers is 'engaged in … commerce.'" *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022); *see id.* at 456 (evaluating the nature of a "class of workers" based on "the actual work that the members of the class, as a whole, typically carry out.").

Plaintiff belongs to a class of franchise business owners responsible for a wide array of customer-service and management activities. The Distributor Agreement provides that each Independent Distributor is "an independent business," Dkt. 28-1 at p. 15, with exclusive "ownership" of the rights to sell and distribute Flowers products in a particular geographic territory, *id.* at p. 6. Independent Distributors build equity in these ownership rights, which can increase or decrease in value and be sold for a profit (or loss). *See id.* at pp. 13–14. The Agreement identifies Plaintiff as the owner and president and of an Independent Distributor. *Id.* at pp. 24, 34. And it requires the Distributor to perform a variety of tasks, including making and using "advertising materials," *id.* at p. 13, maintaining "sole[] responsibility for all taxes and transactional reporting requirements," *id.* at p. 15, and hiring any necessary employees, *id.* at p. 16. Crucially, however, the Agreement does not require owners like Plaintiff to conduct *any* of these activities "personally." *Id.* ("This Agreement does not require that Distributor's obligations … be conducted personally, or by any specific individual.). That means that Plaintiff need not ever touch—much less transport—a single good. *Cf. Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020) (considering whether the "movement of goods is a central part of the class members' job description").

To be sure, Plaintiff's *business* is responsible for the transportation of goods. But the Supreme Court has emphasized that "[t]he relevant question" under § 1 is "what the employee

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

does," "not what [a business] does generally." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 247 (2024) (citing *Saxon*, 596 U.S. at 456). And franchise business owners like Plaintiff do not "play a direct and 'necessary role in the free flow of goods.'" *Saxon*, 596 U.S. at 458; *see also Lopez v. Cintas Corp.*, 47 F. 4th 428, 432, 433 (5th Cir. 2022) (holding that a class of "local delivery drivers" with a "customer-facing role" emphasizing "sales and customer service" fell outside "§ 1's ambit").

Plaintiff's allegations that he personally chose to load and transport goods himself—when the Distributor Agreement made clear that he had no obligation to do any of that work himself—make no difference. Opp. at pp. 11, 26 (alleging that Plaintiff spent "between 40 and 50 hours per week driving products from Flowers' warehouse to his retail locations"). Section 1 asks about the work that "members of the class, *as a whole*, typically carry out." *Saxon*, 596 U.S. at 456 (emphasis added). And consistent with the plain text of § 1, courts assess a class of workers' "typical duties" by looking at, among other things, "the contents of the parties' agreement(s)." *Singh v. Uber Technologies, Inc.*, 67 F.4th 550, 557 (3d. Cir. 2023); *see* 9 U.S.C. § 1 (focusing on "contracts of employment" and the work workers are "engaged" perform). Here, the Distributor Agreement establishes that franchise business owners like Plaintiff are "engaged" to run businesses, not to personally transport goods. *See* Dkt. 28-1 at p. 16. Accordingly, Plaintiff is not a transportation worker for purposes of § 1.

**3. Franchise Business Owners Like Plaintiff Are Not Engaged in Interstate Commerce.**

Finally, even if Plaintiff qualified as a transportation worker, he does not "play a direct and 'necessary role in the free flow of goods' *across borders*." *Bissonnette*, 601 U.S. at 256 (internal quotation omitted) (emphasis added). Plaintiff's business served a territory entirely within the State of Oregon. Dkt. 28 (Stewart Decl.) ¶¶ 6–7; Dkt. 28-1 at pp. 25–27. As a result, he never

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

transported goods across state lines, nor did he ever load or unload goods from a vehicle traveling interstate. Dkt. 28 (Stewart Decl.) ¶¶ 6–7, 13. Instead, he took title to goods *after* they arrived at a warehouse in Oregon, and then executed independent sales to local retailers. *See* Dkt. 28-1 at p. 6. The fact that those goods moved across states lines at some point *before* Plaintiff took title to them does not trigger § 1. *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021) ("the residual exemption is . . . about what the worker does, not just where the goods . . . have been"); *Wallace*, 970 F.3d at 802 ("[T]o fall within the exemption, the workers must be connected not simply to the goods, but to the act of moving those goods across state or national boards.").

Plaintiff makes three primary arguments in response. All are meritless. *First*, Plaintiff insists that he was at least as involved with interstate commerce as the plaintiff in *Saxon*. *See* Opp. at pp. 19–20. But *Saxon* involved a "ramp supervisor" who was "frequently require[d] . . . to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country." 596 U.S. at 453. The class of workers to which Plaintiff belongs, by contrast, *never* load or unload goods out of vehicles that travel interstate. *See* Dkt. 28 (Stewart Decl.) ¶ 13. For that reason, Plaintiff is also unlike the airline fuel technician the Ninth Circuit recently deemed covered by Section 1. *See Lopez v. Aircraft Service Int'l*, No. 23-55015, 2024 WL 3464425, at *6 (9th Cir. July 19, 2024). Unlike a technician who adds fuel to an airplane traveling in interstate commerce, Plaintiff does not do *anything* to assist the operations of vehicles traveling interstate.

*Second*, Plaintiff contends that this case is indistinguishable from two Ninth Circuit decisions involving last-mile drivers: *Rittmann*, 971 F.3d at 915, and *Carmona Mendoza v. Domino's Pizza*, 73 F.4th 1135, 1138 (9th Cir. 2023). *See* Opp. at pp. 23–24. In *Rittmann*, the Ninth Circuit held that local drivers who executed "interstate transactions between Amazon and the customer" by transporting packages "for the last leg of the shipment to their destination" are

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

engaged in interstate commerce for purposes of § 1. 971 F.3d at 915–16. Similarly, in *Carmona Mendoza*, the Ninth Circuit held that § 1 covers Domino's drivers who play a role in "a single, unbroken stream of interstate commerce" by picking up ingredients that arrive from out of state and delivering them to local franchisees. 73 F.4th at 1136. As *Rittmann* itself recognized, however, "new or subsequent transactions" after interstate shipment break the chain of interstate commerce. *Rittmann*, 971 F.3d at 916 (explaining that such transactions "mark[] the dividing line between interstate and intrastate commerce"). Accordingly, the dispositive question in last-mile cases is whether intrastate deliveries are part of "a single, unbroken stream of interstate commerce coordinated by [the defendant] from origin to destination," *Capriole*, 7 F.4th at 866, or whether they constitute "new or subsequent transactions," *Rittmann*, 971 F.3d at 916.

This case falls squarely into the latter bucket. Whereas the delivery drivers in *Rittmann* and *Carmona Mendoza* executed interstate transactions controlled from order to delivery by Amazon and Domino's, respectively, Plaintiff *purchases and takes title to* Flowers products after they arrive at a warehouse in Oregon and then sells those products to his own local customers for a profit. *See* Dkt. 28 (Stewart Decl.) ¶ 12; Dkt. 28-1 at p. 6. Those "new or subsequent transactions" break the chain of interstate commerce for purposes of applying the FAA. *Rittmann*, 971 F.3d at 916. Indeed, the fact that Plaintiff takes title to the goods in question—and literally never crosses state lines in the course of his work—makes this case even easier than others in which courts have found that local food delivery and rideshare drivers do not qualify as interstate transportation workers under § 1. *Wallace*, for example, held that § 1 does not cover Grubhub drivers who deliver food from local restaurants because their work is unconnected to "the act of moving … goods across state or national borders." 970 F.3d at 802–03; *see also Immediato v. Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022) (same for Postmates drivers). Similarly, *Capriole*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

rejected a § 1 claim by Uber drivers because their work "is primarily local and intrastate in nature." 7 F.4th at 864; *see also Cunningham v. Lyft*, 17 F.4th 244, 253 (1st Cir. 2021) (same for Lyft drivers). Like local food delivery drivers, Plaintiff conducts distinct transactions with local customers. And like rideshare drivers, Plaintiff's work is local and intrastate in nature.

*Third*, Plaintiff attempts to bring himself within the ambit of "unbroken stream of interstate commerce" cases by suggesting that his business neither gains title to the goods its sells or executes distinct transactions. *See* Opp. at pp. 8–9. But the Distributor Agreement could hardly be clearer on these points. It states plainly that "[t]itle and risk of loss shall pass to DISTRIBUTOR upon delivery" of the goods. Dkt. 28-1 at p. 6. And it requires the Distributor—not Defendants—to "maximize the sale of Products to Outlets within the Territory" and use its "best efforts" to do so. *Id.* As such, it is clear that the chain of interstate commerce is broken for purposes of the FAA.

Plaintiff's attempts to muddy those clear waters by pointing to various other documents fail. Plaintiff cites an internal company memorandum that circulated more than 11 years ago—long before Flowers engaged Independent Distributors in Oregon. *See* Opp. at p. 8 (citing Dkt. 31-5 at p. 2). But that memo discusses the model (as it existed then) "from an accounting perspective *only*"; it expressly disclaims any "inten[t] to analyze the legal structure or transactions" with distributors. Dkt. 31-5 at p. 2 (emphasis added). Plaintiff also cites various public filings and consolidated financial reports. *See* Opp. at pp. 8–9; *see also* Palmer Decl., Ex. A, ¶¶ 12–16; Ex. B, ¶¶ 8-12; Ex. C, ¶¶ 20–21, 23–26. But those documents reflect generally accepted accounting and revenue recognition principles, which provide that Flowers cannot recognize "earned" revenue until goods are sold by Independent Distributors to end purchasers. Palmer Decl., Ex. A, ¶ 17; Ex. B, ¶ 14; Ex. C, ¶ 26.[3] They are entirely consistent with provisions in the Distributor Agreement

[3] This delayed revenue recognition—which is required by generally accepted accounting



OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

making clear that title passes when goods are picked up at the warehouse and that Independent Distributors execute distinct, local transactions. *See* Palmer Decl., Ex. A, ¶¶ 13, 16, 18; Ex. B, ¶¶ 9, 12, 15; Ex. C, ¶¶ 21, 24, 27.

* * *

Section 1 of the FAA does not apply because the Distributor Agreements are not "contracts of employment," because franchise business owners are not "transportation workers," and because Plaintiff works exclusively intrastate. Accordingly, arbitration is required under § 2.

**B. <u>In the Alternative, the Arbitration Agreement Is Enforceable Under Oregon Law</u>.**

In any event, Oregon law mandates enforcement of the Arbitration Agreement even if the FAA's transportation worker applies. The Arbitration Agreement provides that it "shall be governed by the FAA and Oregon law to the extent Oregon law is not inconsistent with the FAA." Dkt. 28-1 at p. 42. That provision reflects the parties' intent that Oregon law apply if the FAA does not. *See Noorzai*, 2015 WL 5037669, at *4 ("State law controls where the FAA does not apply."); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (explaining that "the District Court erred in holding that [a plaintiff's] exemption status under section 1 of the FAA preempts the enforcement of the arbitration agreement under . . . state law" because when the transportation worker exemption applies, it is "as if the [FAA] had never been enacted").

Plaintiff is wrong that enforcing the Agreement under Oregon law would somehow be "inconsistent with the FAA." Dkt. 28-1 at p. 42; *see* Opp. at pp. 26–27. The Ninth Circuit and

principles—is based on a risk of loss analysis pertaining to the goods sold, not the relationship between Defendants and the distributor. Palmer Decl., Ex. B, ¶ 12. Contrary to Plaintiff's wholly unsupported assertions, that application of revenue recognition principles in no way implies that the sale of baked goods to distributors is a sham or that distributors do not take title to the products. In fact, it means the opposite: These principles apply only to transactions between two independent entities. *Id.* at Ex. B ¶¶ 9, 12, 15.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

other courts across the country have enforced arbitration agreements under state law even where § 1 applies. *See, e.g.*, *Romero v. Watkins and Shepard Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *2 (9th Cir. Aug. 19, 2021) (enforcing arbitration agreement under Nevada law after finding that the § 1 exemption applied); *Palcko*, 372 F.3d at 594–95 (enforcing arbitration agreement under Washington law after finding that the § 1 exemption applied); *Saxon v. Sw. Airlines Co.*, No. 19-CV-00403, 2023 WL 2456382, at *3–4 (N.D. Ill. Mar. 10, 2023) (enforcing arbitration agreement under Illinois law after Supreme Court held that § 1 exemption applied); *see also Oliveira*, 857 F.3d at 24 (explaining that exclusion from the FAA "has no impact on other avenues (such as state law) by which a party may compel arbitration"); *Cole v. Burns Int'l Sec. Serv.,* 105 F.3d 1465, 1472 (D.C. Cir. 1997) ("[W]e have little doubt that, even if an arbitration agreement is outside the FAA, the agreement still may be enforced."). As those courts have recognized, enforcing an arbitration agreement under state law "furthers the general policy goals of the FAA favoring arbitration." *Palcko*, 372 F.3d at 595. The sole district court case on which Plaintiff's contrary argument relies, *Brock v. Flowers Foods, Inc.*, 673 F. Supp. 3d 1180 (D. Colo. 2023), is inconsistent with all of this authority—and currently pending before the Tenth Circuit on appeal.[4]

Plaintiff is also wrong that the Arbitration Agreement cannot be enforced under Oregon law because it does not comply with the notice requirements set forth in Oregon Revised Statutes §§ 36.620(5) and (6). *See* Opp. at pp. 27–28. As an initial matter, these provisions apply only to "agreement[s] entered into between an employer and employee." Or. Rev. Stat. § 36.620(5). The

[4] To the extent that the Court deems the Arbitration Agreement's language ambiguous with respect to the applicability of Oregon law in the event the FAA is inapplicable, it should "resolve that ambiguity in favor of arbitration." *Industra/Matrix Joint Venture v. Pope & Talbot, Inc.*, 142 P.3d 1044, 1053 (Or. 2006).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

Distributor Agreement is a commercial contract entered into by two business entities, not an agreement "between an employer and an employee." Or. Rev. Stat. § 36.620(5)*; see also supra* pp. 2–8. Indeed, the Agreement specifically disclaims any employment relationship between the parties. Dkt. 28-1 at p. 15 ("Neither DISTRIBUTOR nor any of DISTRIBUTOR's employees, agents, or servants shall be considered or deemed in any way to be employees, agents or servants of COMPANY"). Subsections 36.620(5) and (6) therefore do not apply.

In any event, the Distributor Agreement complies with both provisions. Subsection (5) requires that an employee receive written notice that his position depends on acceptance of an arbitration agreement at least 72 hours before he starts work. Plaintiff signed the Arbitration Agreement on September 28, 2016, and did not begin performing services under the Distributor Agreement until October 10, 2016. Dkt. 28-1 at pp. 3, 42. Subsection (6) requires an employer to include specific language in an arbitration agreement so that an employee can acknowledge receipt. The Agreement here includes that language nearly word-for-word:

> DISTRIBUTOR acknowledges that it has received and read and specifically agrees to be bound by this Arbitration Agreement. DISTRIBUTOR understands that this Arbitration Agreement requires that disputes that involve matters subject to the Agreement be submitted to arbitration pursuant to the Arbitration Agreement rather than to a judge or jury in court and that such disputes must be brought on an individual basis only.

*Id.* at p. 42; *see* Or. Rev. Stat. § 36.620(6).

### C. <u>The Court Should Strike Plaintiff's Class and Collective Allegations.</u>

Finally, the Arbitration Agreement includes an unequivocal waiver of any right to bring claims arising from the Distributor Agreement on a class or collective basis. In capitalized, bolded letters, both parties "explicitly waive[d] any right to … initiate or maintain any covered claim on a class, collective, representative, or multi-plaintiff basis either in court or arbitration." Dkt. 28 (Stewart Decl.) at ¶ 8; Dkt. 28-1 at p. 40; *see generally Epic Sys. Corp. v. Murphy Oil USA*, 584

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

U.S. 497, 502–03 (2018) (holding that class and collective action waivers are enforceable). The Court should accordingly grant Flowers' motion to strike the class and collective action allegations. *See* Fed. R. Civ. P. 12(f) ("[t]he court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter"); *see, e.g.*, *Barnett v. Concentrix Sols. Corp.*, No. CV-22-00266-PHX-DJH, 2022 WL 17486813, at *4, *6, *11 (D. Ariz. Dec. 7, 2022) (enforcing class action waiver and requiring that the plaintiff pursue his "causes of action as an individual").

Plaintiff acknowledges that arbitration must proceed on an individual basis if there is a valid agreement to arbitrate. *See* Opp. at p. 33. He argues, however, that he may proceed on a class and collective basis in federal court in the event the motion to compel is denied. *Id.* Plaintiff is wrong, because the arguments he makes against enforcement of the agreement to arbitrate would not invalidate that document's separate and distinct waiver of the right to proceed on a class or collective basis. Again, § 1 "has no impact on other avenues (such as state law) by which a party may compel arbitration" or enforce other provisions of a contract. *Oliveira*, 857 F.3d at 24; *see supra* p. 14. Moreover, the Agreement contains a severability clause providing that "any provision" "determined to be unlawful, invalid, or unenforceable" "shall be enforced to the greatest extent permissible under the law or, if necessary, severed, and all remaining terms and provisions shall continue in full force and effect." Dkt. 28-1 at pp. 41–42. So even if the parties' agreement to arbitrate were somehow invalid, their separate agreement to "waive any right to … initiate or maintain any covered claim on a class, collective, representative, or multi-plaintiff basis . . . in court" survives. *Id.* at p. 40; *see, e.g.*, *Figueredo-Chavez v. RCI Hospitality Holdings, Inc.*, 574 F. Supp. 3d 1175, 1180-83 (S.D. Fla. 2021) (severing a collective action waiver from an arbitration clause that was "not enforceable" and ruling that "the collective action waiver must be enforced").

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518

## III. CONCLUSION

For the foregoing reasons, as well as those given in Flowers' motion, this Court should grant Flowers' motion to compel arbitration, strike the class and collective allegations, and stay further proceedings.

Dated: August 1, 2024

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By: *Is/ Jared L. Palmer* (CA SBN 287974)
Elizabeth A. Falcone (OSB No. 111694)
Jared L. Palmer (CA SBN 287974), pro hac vice
Ethan Lai (CA SBN 347130), pro hac vice
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Tel: (415) 442-4810
Fax: (415) 442-4870
Email: elizabeth.falcone@ogletree.com
Email: jared.palmer@ogletree.com
Email: ethan.lai@ogletree.com

Attorneys for Defendants
FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS BAKING CO. OF PORTLAND, LLC

18 – DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION, STRIKE CLASS AND COLLECTIVE ALLEGATIONS, AND STAY THE PROCEEDINGS

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center | 222 SW Columbia Street, Suite 1500 | Portland, OR 97201
Phone: 503.552.2140 | Fax: 503.224.4518